UNITED STATES of America, Plaintiff,

v.

NEW CASTLE COUNTY, William C. Ward, Stauffer Chemical Company and ICI Americas Inc., Defendants.

NEW CASTLE COUNTY, Stauffer Chemical Company and ICI Americas Inc., Defendants/Third-Party Plaintiffs,

v.

AVON PRODUCTS, INC., NVF Company, the Budd Company, Hercules, Incorporated, Specialty Composites Corporation, Standard Chlorine of Delaware, Inc., Diamond Shamrock, American Hoechst Corporation, E.I. DuPont de Nemours & Co., Motor Wheel Corporation, General Motors Corporation, Chrysler Corporation, Witco Chemical Corporation, Amoco Chemical Corporation, Keysor-Century Corporation, Koppers Company, Inc., Chloramone Corporation, FMC Corporation, Allied Corporation, Westvaco Corporation, Wilmington Chemical Corporation, Gates Engineering, Atlantic Aviation Corporation, Kennecott Corporation, Champlain Cable Corporation, Ametek, Inc., State of Delaware and Harvey & Harvey, Third-Party Defendants.

Civ. A. No. 80–489.

United States District Court,
D. Delaware.

July 17, 1986.

See also D.C., 642 F.Supp. 1270, D.C., —— F.R.D. ——.

Richard G. Andrews, Dept. of Justice, Wilmington, Del., for U.S.; Judith A. Dorsey, U.S. E.P.A., Philadelphia, Pa., William D. Evans, Jr., Dept. of Justice, Washington, D.C., of counsel.

B. Wilson Redfearn of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for New Castle County; George J. Weiner of Schmeltzer, Aptaker & Sheppard, Washington, D.C., of counsel.

James F. Burnett of Potter, Anderson & Corroon, Wilmington, Del., for William C. Ward.

Jeffrey B. Bove of Connolly, Bove, Lodge & Hutz, Wilmington, Del., for Stauffer Chemical Co.; Gerald Sobel of Kaye, Scholer, Fierman, Hays & Handler, New York City, and Wendy J. Tish of Stauffer Chemical Co., Westport, Conn., of counsel.

Joseph C. Kelly of ICI Americas, Inc., Wilmington, Del., for ICI Americas Inc.; Denis V. Brenan of Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Gerald C. Foulk of Miller & Foulk, Wilmington, Del., for Avon Products, Inc.; J. Brian Molloy of Wald, Harkrader & Ross, Washington, D.C., of counsel.

James T. McKinstry of Richards, Layton & Finger, Wilmington, Del., for NVF Co., General Motors Corp. and Diamond Shamrock.

J.R. Julian, Wilmington, Del., for Budd Co.; Jennifer Berke of Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., of counsel.

Henry N. Herndon, Jr. of Morris, James, Hitchens & Williams, Wilmington, Del., for Hercules, Inc.; Edward Wolper of Hercules Inc., Wilmington, Del., of counsel.

James F. Bailey of Elzufon & Bailey, Wilmington, Del., for Specialty Composites Corp.; Joseph G. Manta of Frumkin & Manta, Philadelphia, Pa., of counsel.

James C. Laager of Saul, Ewing, Remick & Saul, Wilmington, Del., for Standard Chlorine of Delaware, Inc.

C. Scott Reese of Cooch & Taylor, Wilmington, Del., for American Hoechst Corp.; Lorelei J. Borland of Morgan, Melhuish, Monaghan, Meyer, Arvidson, Arbrutzer & Liskowski, New York City, of counsel.

Richard Allen Paul of E.I. DuPont de Nemours & Co., Wilmington, Del., for E.I. DuPont de Nemours & Co.

David C. Toomey of Duane, Morris & Heckscher, Philadelphia, Pa., for Motor Wheel Corp. and Allied Corp.

Kurt J. Doelze of Ferri & Doelze, Wilmington, Del., for Chrysler Corp.; Harry

A. Short, Jr., of Liebert, Short, Fitzpatrick & Hirshland, Philadelphia, Pa., of counsel.

John C. Phillips, Jr. of Phillips & Snyder, Wilmington, Del., for Witco Chemical Corp.; Thomas J. Jackson of Thorp, Reed & Armstrong, Pittsburgh, Pa., of counsel.

Howard M. Berg of Howard M. Berg & Associates, Wilmington, Del., for Amoco Corp.; Ronald J. Ganim of Amoco Corp., Chicago, Ill., of counsel.

William J. Weir, Jr. of Herlihy & Weir, Wilmington, Del., for Keysor-Century Corp.

John C. Phillips, Jr. of Phillips & Snyder, Wilmington, Del., for Koppers Co., Inc.; Jill M. Blundon of Koppers Co., Inc., Pittsburgh, Pa., of counsel.

John W. Noble of Parkowski, Noble & Guerke, Dover, Del., for Chloramone Corp.

John C. Phillips, Jr. of Phillips & Snyder, Wilmington, Del., for FMC Corp.; William R. Herman of Dechert Price & Rhoads, Philadelphia, Pa., of counsel.

Thomas G. Hughes of O'Donnell & Hughes, Wilmington, Del., for Westvaco Corp.; Brigid E. Kenney of Venable, Baetjer & Howard, Baltimore, Md., of counsel.

Stephen P. Lamb of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., Wilmington Chemical Corp.; John H. Klock of Crummy, DelDeo, Dolan, Griffinger & Vecchione, Newark, N.J., of counsel.

James P. Collins of Healy & Collins, Wilmington, Del., for Gates Engineering; Blake A. Biles of Jones, Day, Reavis & Pogue, Washington, D.C., of counsel.

James T. McKinstry of Richards, Layton & Finger, Wilmington, Del., for Atlantic Aviation; Franklin S. Eyster, II of Atlantic Aviation Corp., Wilmington, Del., of counsel.

Robert J. Katzenstein of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., for Kennecott Corp.; Stephen W. Miller of Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., of counsel.

Henry N. Herndon, Jr. of Morris, James, Hitchens & Williams, Wilmington, Del., for Champlain Cable Corp. and Ametek, Inc.

Robert R. Thompson, Dept. of Justice, Dover, Del., for State of Del.

James M. Geddes of Ashby, McKelvie & Geddes, Wilmington, Del., for Harvey & Harvey.

## OPINION

LONGOBARDI, District Judge.

Defendants ICI Americas Inc., New Castle County and Stauffer Chemical Company have filed third-party complaints against various entities, each of which allegedly disposed of hazardous substances at the Tybout's Corner Landfill site during the period of its operation. Docket Item ("D.I.") 474, 492 and 496. The Defendants contend that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") (42 U.S.C. § 9601, *et seq.*) provides the authority for them to recover some of their expenditures for clean-up costs from third parties. The Third-Party Defendants[1] ["TPDs"] have moved to dismiss all third-party claims contending that no right to contribution exists under CERCLA.

## I. BACKGROUND

Courts have been virtually unanimous in holding that some form of private right of action is authorized under CERCLA. *Artesian Water Co. v. Govt. of New Castle County,* 605 F.Supp. 1348 (D.Del.1985); *Walls v. Waste Resource Corp.,* 761 F.2d 311, 22 E.R.C. 1785 (6th Cir.1985); *Mola Development Corp. v. U.S.,* 22 E.R.C. 1443 (C.D.Cal.1985) (available in WESTLAW, DCTU database); *State of Colo. v. ASARCO, Inc.,* 608 F.Supp. 1484 (D.Colo. 1985); *U.S. v. Ward,* 22 E.R.C. 1235 (E.D.N.C.1984); *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283 (N.D.Cal.1984); *Jones v. Inmont Corp.,* 584 F.Supp. 1425 (S.D.Ohio 1984); *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135 (E.D.Pa.1982); *contra, U.S. v. Westinghouse Electric Corp.,* 22 E.R.C. 1230 (S.D.Ind.1983).

The specific statutory authority supporting a right of action under CERCLA is section 107(a)(1–3), (4)(B) [42 U.S.C. § 9607(a)(1–3), (4)(B)] ("section 107(a)(4)(B)"). This section states in pertinent part:

9607. Liability

(a) Covered persons; scope

Notwithstanding any other provisions or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a ... facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

\* \* \* \* \* \*

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

---

1. The Third-Party Defendants, pursuant to an arrangement developed during the Court's September 20, 1985 hearing, submitted a consolidated brief on the contribution issue. Not all of the Third-Party Defendants, however, are participating in this motion. For the record, the parties bringing this motion are Kennecott Corporation, Atlantic Aviation Corporation, Chloramone Corporation, Diamond Shamrock, General Motors Corporation, Keysor-Century Corporation, Koppers Company, Inc., NVF Company, Specialty Composites Corporation, Westvaco Corporation and Harvey & Harvey, Inc. D.I. 864, p. 2.

42 U.S.C. § 9607(a)(4)(B) [CERCLA § 107(a)(4)(B) ].

In *Walls v. Waste Resources Corp.*, 761 F.2d 311, 22 E.R.C. 1785, a group of residents sued the owners, operators and users of a landfill to recover moneys plaintiffs had spent to abate the environmental damage caused by leakage at the landfill. The court found that Congress did "intend to create a private right of action under CERCLA" by the language of section 107(a)(4)(B). *Id.* at 1790; *see Jones v. Inmont Corp.*, 584 F.Supp. 1425.

Similarly, in *Artesian Water Company v. Govt. of New Castle County*, 605 F.Supp. 1348, a water company successfully sued the county for costs it incurred in providing its customers with an alternative water supply after a release of hazardous substances at the county landfill threatened the existing supply. The court found that "the clear language" of CERCLA provided the water company a private right of action to recover its costs. *Id.* at 1356.

■ The Court agrees with the weight of authority and holds that a private right of action is authorized under CERCLA pursuant to section 107(a)(4)(B). The right of action emanates from the plain language of the section and provides relief to any person incurring response costs for which another person is otherwise liable under the Act.

TPD's have moved to dismiss the third party complaints asserting that no *right to contribution* exists under CERCLA. Defendants/Third-Party Plaintiffs argue that the same plain language of section 107(a)(4)(B) which supports a private right of action necessarily authorizes the right of a responsible party once sued to recover from another responsible party. This result, however, is not mandated by the plain language of section 107(a)(4)(B). Two phrases within section 107(a)(4)(B) raise serious questions as to the applicability of that provision as authority for a right to contribution. First, it is not clear that once a responsible party has been sued his monetary expenditures to abate an environmental hazard qualify as "necessary costs of response" under the Act. Second, it is unclear whether the phrase "any other person" in section 107(a)(4)(B) means only individuals engaged in voluntary cleanup or whether it also includes individuals who are CERCLA Defendants engaged in cleanup compelled by the threat of imminent statutory liability.

The courts are in basic agreement on the fundamental question of whether a right to contribution exists under CERCLA. Most courts have held that the right does exist. Still, they have been unable to agree on the source of that authority. For example, some courts indicate that they find the right to contribution to be expressly authorized by the language of section 107(a)(4)(B). On the other hand, in *United States v. Conservation Chemical Co.*, 619 F.Supp. 162 (W.D.Mo.1985), the court found the right to exist by "implication." Finally, the court in *State of Colo. v. ASARCO, Inc.*, 608 F.Supp. 1484, found the authority for the right to be federal common law.

## II. THE SOURCE OF THE RIGHT TO CONTRIBUTION

The Supreme Court has established that a right to contribution, if it exists in the framework of a particular statutory scheme, must have been created in one of two ways. "[F]irst, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981); *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 90–91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981). Third-Party Plaintiffs urge that a right to contribution exists under CERCLA pursuant to either prong of the *Texas Industries* test.

### A. An Affirmative Creation of a Right to Contribution by Congress.

#### 1. *Did Congress Expressly Create a CERCLA Right to Contribution?*

It cannot be seriously argued that Congress expressly created a right to contribu-

tion under CERCLA. The word "contribution" does not exist anywhere in the statute. Indeed, express contribution provisions were considered by Congress prior to passage of the final bill but each was rejected. *See, e.g.,* 126 Cong.Rec. S. 14,941[2] (daily ed., Nov. 24, 1980); 126 Cong.Rec. H. 9461–64[3] (daily ed., Sept. 23, 1980).

Further, Congress has seen fit to include contribution provisions in other statutory schemes where deemed appropriate. *See, e.g.,* 15 U.S.C. § 77k(f) [Securities Act of 1933]; 15 U.S.C. §§ 78i(e), 78r(b) [Securities Exchange Act of 1934]. These provisions contain express "contribution" language. The absence of similar contribution language in CERCLA weighs most heavily in the rejection of any argument that the Act "expressly" provides such a provision.

### 2. *Did Congress Create a CERCLA Right to Contribution by Clear Implication?*

In evaluating whether Congress did affirmatively create a right to contribution by clear implication, the major focus of review is on Congressional intent. *Texas Industries,* 451 U.S. at 639, 101 S.Ct. at 2066. This "intent may be discerned by looking to the legislative history and other factors: *e.g.,* the identity of the class for whose benefit the statute was enacted, the overall legislative scheme and the traditional role of the states in providing relief." *Id.; Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975)

It must be initially acknowledged that a *Texas Industries*-type analysis which is heavily dependent on a review of legislative history is not a simple undertaking under

CERCLA. One striking feature of CERCLA's legislative history is the fact that it is sparce. Grad, *A Legislative History of the Comprehensive Environment Response, Compensation and Liability ("Superfund") Act of 1980,* 8 Colum.J.Envtl.L. 1 (1982). A number of CERCLA bills made their way through Congress in the late 1970's but each for various reasons became sidetracked at early stages. Congress was troubled by the complexity of the legislation, the number of controversial provisions suggested in some of the bills (including those providing an express right to contribution), the absence of a victim's compensation provision, an authority to spend by the EPA which some in Congress considered too discretionary, *see, e.g.,* 126 Cong.Rec. H. 11,790–95 (daily ed. Dec. 3, 1980), and the very politically disquieting concept of the Superfund which would be financed in large part by fees or excise taxes assessed on the petroleum and chemical industries.

Even in the absence of significant legislative history, however, arguments have been made that CERCLA's statutory language supports the conclusion that Congress intended by clear implication to provide a right to contribution under the Act. Although these arguments have merit, I cannot agree that the conclusion reached is correct.

#### (a) *Does a Right to Contribution Arise by Clear Implication From Section 107(a)(4)(B)?*

The idea that a right to contribution exists by clear implication from section 107(a)(4)(B) does have appeal. The pertinent language supporting the proposition is

---

**2.** Section 4(f)(1) of S. 1480 as reported from the Senate Committee on Environment and Public Works contained both joint/several liability language and a contribution provision:

In any action brought under this section ..., a person held jointly and severally liable with one or more persons is entitled to seek contribution from such persons. In any case where a person held liable under this section alleges that the discharge, release, or disposal or the consequent damages are solely or in part due to the act or omission of a third party, such party retains all rights against such third par-

ty and shall be entitled to join such third party as a defendant....

**3.** "[T]he court may apportion the liability among the parties where deemed appropriate based upon evidence presented by the parties as to their contribution...." *Ibid.* at H. 9461. [Amendment to H.R. 7020 offered by Rep. Gore]. Rep. Gore remarked that the amendment would allow a defendant to implead other responsible parties for purposes of liability apportionment [contribution]. *Ibid.* at H. 9464.

that "any person [owner or operator of a facility, generator, transporter] shall be liable for ... (B) any other necessary costs of response incurred by *any other person* ...." 42 U.S.C. § 9607(a)(4)(B) [emphasis added].

Section 107(a)(4)(B) does authorize recovery by a potentially responsible party for response costs it incurs at a site. *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283; *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135. The CERCLA liability provision, with its use of the term "any other person" and its limited enumerated defenses to liability,[4] leaves little room for doubt that Congress intended the liability provision to sweep broadly and to be employed as a major tool to facilitate cleanup. *Contra, e.g., Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049 (D.Ariz.1984) [doctrine of unclean hands precludes one responsible party from suing another responsible party under the Act].

■ As stated earlier, however, Congress' use of the language "any other person" does not compel the conclusion that Congress intended to create a right to contribution under section 107(a)(4)(B). First, the provision speaks in terms of any other person's "response costs." Although "response" is defined under the Act,[5] its definition does not shed any light on whether these expenditures must be voluntary or whether moneys spent pursuant to contingent lawsuit liability also qualify as response costs. In other words, the statute is ambiguous as to whether clean-up expenditures made by a person after being sued are costs of response or are simply costs associated with the lawsuit (damages).[6] Where ambiguity exists in a statute, it is necessary to resolve doubts about interpretation through analysis of legislative history.

■ A review of CERCLA's legislative history shows one of the Act's principle goals to be the achievement of expeditious response to environmental hazards through *voluntary* compliance by responsible parties: "The legislation would establish a Federal cause of action in strict liability to enable the [EPA] Administrator to pursue rapid recovery of the costs incurred for the costs of such [clean-up] actions undertaken by him from persons liable therefor and *to induce such persons voluntarily* to pursue appropriate environmental response actions with respect to inactive hazardous waste sites." *See,* H.R.Rep. No. 1016, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S. Code Cong. & Ad.News 6119, 6120 [emphasis added].

This expressed goal of achieving voluntary cleanup is directly enhanced by Congress' including in section 107(a)(4)(B) the ability of responsible persons to recover voluntarily incurred response costs from other responsible persons. A person or entity which recognizes its responsibility under the Act is encouraged to take early action to remedy hazardous conditions at a landfill because section 107(a)(4)(B) provides a mechanism for that entity to recover at least part of its expenditures from other responsible persons.

Indeed, it is unlikely in the absence of such a mechanism that responsible persons would ever voluntarily come forward to clean-up sites. Without the benefit of section 107(a)(4)(B), any responsible person who voluntarily comes forward to cleanup a site would be subjected to liability for the entire clean-up cost. It is not hard to imagine that such a system would discourage

---

4. The list of defenses to CERCLA liability is enumerated in section 107(b) [42 U.S.C. § 9607(b)]. These defenses are (1) act of God, (2) act of war, (3) act or omission of independent third party, or (4) any combination of the first three.

5. Response means "remove, removal, remedy and remedial action." 42 U.S.C. § 9601(25).

6. Specifically, the statute is silent as to whether a defendant's liability in damages or its settlement with the Government in a CERCLA suit is a "cost of response" under the Act. Although damages and settlement moneys are used to abate the environmental harm (or to reimburse the Fund), it is unclear whether Congress intended section 107(a)(4)(B) to be applied to allow recovery by responsible parties in such a case.

voluntariness but would instead invite responsible individuals to adopt a "wait and see" attitude with the hope that some other responsible entity will eventually be the one sued by the Government under section 107(a) of the Act.

A right to contribution, however, does not directly support the important expressed Congressional policy that CERCLA encourage voluntary cleanup. A right to contribution cannot encourage voluntary cleanup since it does not come into play until after a lawsuit has already been instituted against a responsible party. Although a right to contribution does support other important policies (discussed *supra*), Congress in passing CERCLA did not allude to these specific policies as being among its fundamental concerns. And, the Court finds little in the legislative history of CERCLA to indicate that Congress considered section 107(a)(4)(B) as providing authority for a right to contribution. As a result, under the *Texas Industries* analysis, I conclude that Congress did not intend section 107(a)(4)(B) to authorize a right to contribution by clear implication.

(b) *Did Congress Create a Right to Contribution Under Section 107(e)(2) by Clear Implication?*

 Arguments have been made that Congress intended by "clear implication" to create a right to contribution under section 107(e)(2). That section states in pertinent part:

Nothing in this subchapter, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

42 U.S.C. § 9607(e)(2) [CERCLA § 107(e)(2) ].

7. As will be discussed in the next section of this Opinion, a right to contribution may arise through development of federal common law by the courts. Although section 107(e)(2) does not go so far as to authorize a right to contribution, it does authorize federal courts to fill in gaps

One need go no further than the plain language of this subsection to conclude that the arguments raised in support of the proposition cannot withstand scrutiny. Section 107(e)(2) does not authorize a right to contribution. Rather, it simply expresses Congress' view that CERCLA's liability provisions are not all-inclusive and that the legislature did not intend to preclude individuals from pursuing remedies not expressly provided for by the Act. But to say that section 107(e)(2) authorizes a right to contribution goes too far. That view is not expressly stated in the statute. And, there is little legislative history to support the proposition. Instead, a reasonable reading and interpretation of the provision shows that section 107(e)(2) simply *preserves* actions not provided by CERCLA, if authority for these actions otherwise exists. In the Court's view, "Congress, in § 107(e)(2), explicitly declared its intent to preserve actions for contribution to the extent that the common law provides a right to such actions." *State of Colo. v. ASARCO, Inc.,* 608 F.Supp. at 1492. As a result, if a right to contribution exists under CERCLA, authorization for the right must come from the common law.[7]

**B. A Right to Contribution Arising From the Federal Common Law of Liability.**

 As stated earlier, a right to contribution may arise either from the affirmative creation of a right of action by Congress (discussed *infra*) or "through the power of federal courts to fashion a federal common law of contribution." *Texas Industries,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500. For the reasons set forth below, the Court does find that Congress empowered the federal courts to establish a federal common law of contribution under CERCLA.

within CERCLA's liability provisions. Thus, section 107(e)(2) supports a finding that Congress left to the courts the decision of whether a right to contribution should exist under CERCLA and the parameters under which the right should be expressed.

*Texas Industries* establishes the standard under which a right to contribution may be created pursuant to the federal common law:

> [T]he Court has recognized the need and authority in some limited areas to formulate what has come to be known as "federal common law." [citation omitted]. These instances are "few and restricted," [citation omitted], and fall into essentially two categories: those in which a federal rule of decision is "necessary to protect uniquely federal interests" [citation omitted], and those in which Congress has given the courts the power to develop substantive law....

*Id.* 451 U.S. at 640, 101 S.Ct. at 2066.

In the *Texas Industries* case, the Court held that no federal common law right to contribution exists under the antitrust laws to benefit a tortfeasor seeking to recover part of its treble damage liability from joint tortfeasors. 15 U.S.C. § 1 [Sherman Act] and 15 U.S.C. § 15 [Clayton Act]. The Court decided that Congress had not empowered federal courts to provide a right to contribution since antitrust treble liability provisions are intended to be punitive. The Court concluded that an antitrust tortfeasor could not share its liability with joint tortfeasors since the result would be inconsistent with the statutory purpose of punishing the wrongdoer.

In arriving at its conclusion, the Court relied on two significant findings—(1) the complete absence of any reference in the legislative history to a federal common law right to contribution, and (2) the lack of a unique federal interest in a right to contribution under Title 15. The Court found the purpose of the antitrust laws to be the need "to regulate interstate and foreign trade." *Id.* at 642, 101 S.Ct. at 2067. This interest would not be enhanced by providing a right to contribution under the Act

since the balancing of joint tortfeasors' rights and obligations through "contribution ... does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control in the absence of statutory authority." *Id.*

### 1. *CERCLA's legislative history supports creation of a federal common law right to contribution.*

Although CERCLA's legislative history is sparce, it is replete with Congressional support for a judicially created right to contribution. On November 24, 1980, the Senate bill which would eventually be enacted into law as CERCLA was introduced by Senator Stafford as an amendment to S. 1480. During floor debate on this amended bill, several Senators expressed the view that liability issues not expressly dealt with in the bill were to be governed by common law principles:

> It is intended that issues of liability not resolved by this act, if any, shall be governed by traditional and evolving principles of common law. An example is joint and several liability. Any reference to these terms has been deleted, and the liability of joint tortfeasors will be determined under common or previous statutory law.

126 Cong.Rec. S. 14,964 (daily ed. Nov. 24, 1980) (statement of Sen. Randolph) [Chairman of the Committee on Environment and Public Works and floor manager of S. 1480]; *see,* 126 Cong.Rec. S. 14,980 (daily ed. Nov. 24, 1980) (statement of Sen. Cohen); 126 Cong.Rec. S. 15,004 (daily ed. Nov. 24, 1980) (statement of Sen. Helms); *See State of Colo. v. ASARCO, Inc.,* 608 F.Supp. at 1489.

The Senate bill was inserted into H.R. 7020,[8] passed by voice vote and returned to

---

**8.** Since the CERCLA legislation was in part a revenue measure, it was necessary to treat it as if it had formally originated in the House. To achieve this, the Senate replaced the provisions of the bill it had received from the House (H.R.

7020) with the provisions of amended S. 1480. The bill containing the Senate provisions was then returned to the House as H.R. 7020. *Grad,* p. 29.

the House for consideration. In the House, Rep. Florio, floor manager of H.R. 7020, explained that although the Senate had replaced the House's version of H.R. 7020 with different language, the bill as amended was basically the same. Specifically, the Senate's elimination of express references to joint and several liability did not suggest an abandonment of this or other liability provisions not expressly contained in the bill. Instead, "[i]issues of joint and several liability not resolved by [the liability provision] shall be governed by traditional and evolving principles of common law. The terms joint and several have been deleted with the intent that *the liability of joint tortfeasors* be determined under common or previous statutory law." 126 Cong. Rec. H. 11,787 (daily ed. Dec. 3, 1980) (statement of Rep. Florio) [emphasis added]. In documents which Rep. Florio introduced into the record at that time, he clarified his view that the bill before the House intended courts considering issues of joint/several liability to incorporate a common law right to contribution. 126 Cong. Rec. H. 11,788 (daily ed. Dec. 3, 1980) (statement of Rep. Florio).⁹

▆ As floor manager of the House bill which was then under consideration, Rep. Florio's remarks regarding issues of CERCLA liability are deserving of substantial weight in a court's consideration of legislative history. *Mills v. United States,* 713 F.2d 1249 (7th Cir.1983). Thus, Rep. Florio's comments explaining the need for specific development of federal common law in the area of CERCLA liability are compelling: "[t]o insure the development of a uniform rule of law, and to discourage business[es] dealing in hazardous sub-

stances from locating primarily in States with more lenient laws, the bill will encourage the further development of a Federal common law in this area." *Ibid.,* 126 Cong. Rec. at H. 11,787.

▆ Recent legislative developments confirm this Court's view that Congress intended federal courts to develop CERCLA contribution as a matter of federal common law. Last year, Congress began consideration of CERCLA amendments to include an express right to contribution. *See, e.g.,* H.R. 2005, 99th Cong., 1st Sess. 135, (1985); H.R. 2817, 99th Cong., 1st Sess. 113(f)(1); 131 Cong.Rec. H. 11,627 (daily ed. Dec. 10, 1985). Although the views of the present Congress in considering these proposed bills are not deserving of great weight in discerning its intentions in passing the original CERCLA legislation in 1980, these views should not be ignored when they are obviously relevant. *Walt Disney Productions v. United States,* 480 F.2d 66 (9th Cir.1973); *United States v. General Motors Corporation,* 518 F.2d 420 (D.C.Cir.1975).

For example, the House Judiciary Committee, after engaging in several weeks of discussion with other House committees having concurrent jurisdiction over the pending CERCLA bill, H.R. 2817 (Energy and Commerce, Public Works, Ways and Means and Merchant Marine and Fisheries), explained the compromise version of the bill resulting from those discussions and expressed its view of the purpose and intent in including an express contribution provision in the bill:

New subsection 113(f)(1) of CERCLA [contribution] also ratifies current judicial decisions that the courts may use

---

9. This clarification was introduced in the form of a letter to Rep. Florio from the U.S. Department of Justice, Office of Legislative Affairs. The letter explains the liability provisions as passed by the Senate (S. 1480) in light of the Senate's decision to delete the terms "joint" and "several" liability from the bill:

"This provision, in our [Department of Justice] view, confirms that a defendant held liable

for response costs has the right to seek contribution from any other person responsible for a release or threat of release of a hazardous substance. A right of contribution is only of value to a defendant who has been held jointly and severally liable. This view is entirely consistent with the legislative history of the bill."
*Ibid.*

their equitable powers to apportion the costs of clean-up among the various responsible parties involved with the site. Courts are to resolve claims for apportionment on a case-by-case basis pursuant to Federal common law, taking relevant equitable considerations into account.

131 Cong.Rec. H. 11,083 (daily ed. Dec. 5, 1985).

In the Senate, Sen. Stafford, Chairman of the Committee on Environment and Public Works, offered amendments to S. 51 to create an express right of action for contribution.[10] He explained that the existing confusion among the courts on the contribution issue has necessitated Congressional action to clarify Congress' position on the issue:

> The amendment is necessary because the Supreme Court, in recent decisions, has refused to imply a right of contribution under other statutes unless expressly stated. These decisions could create doubt regarding the existence of a right of contribution under the Comprehensive Environmental Response, Compensation, and Liability Act, despite several recent district court cases correctly confirming that we intend the law to confer such a right.

131 Cong.Rec. S. 11,855 (daily ed. Sept. 20, 1985).

Finally, the Senate Committee on Environment and Public Works explained one purpose of the proposed contribution amendment to S. 51 as "clarif[ying] and confirm[ing] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially responsible parties...." S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1988). "As with

joint and several liability issues, contribution will be resolved pursuant to Federal common law." *Ibid.*, p. 45.

Based on this analysis of CERCLA's legislative history, the Court concludes that Congress did intend that the courts develop a substantive law of CERCLA contribution as a matter of federal common law.

2. *The presence of substantial federal interests also supports a federal common law right to contribution under CERCLA.*

▮ In *Texas Industries*, the Supreme Court rejected the opportunity to create a federal common law right to contribution under the antitrust laws. The court found no "unique federal interest" to support such a right since the main benefits of a right of contribution would flow only to the antitrust tortfeasors. A right to contribution did not "involve the duties of the Federal Government, the distribution of powers in our federal system or matters necessarily subject to federal control in the absence of statutory authority." *Texas Industries*, 451 U.S. at 642, 101 S.Ct. at 2067. As a result, the Court would not find the right to exist in the absence of express Congressional support for it.

Unlike the antitrust laws, a right to contribution under CERCLA would enhance unique federal interests in two substantial ways. First, the Federal Government is authorized by CERCLA to take action against responsible persons to achieve compliance with the goals of the Act. *See, e.g.,* § 104 [42 U.S.C. § 9604]; § 106 [42 U.S.C. § 9606]; § 107 [42 U.S.C. § 9607]; § 109 [42 U.S.C. § 9609] [civil penalties]. A right to contribution would encourage expeditious settlement of Superfund suits

---

**10.** These amendments were offered by Sen. Stafford on behalf of himself and Sen. Thurmond, Chairman of the Senate Judiciary Committee. Sen. Thurmond explained the purpose of the S. 51 amendments: "All of the expert witnesses appearing before the Committee agree that the right to contribution should be codified in order to encourage responsible parties to

engage in cleanup and settlement. The Committee proposal would codify the right and, *retaining current law*, would allow a judge the discretion and flexibility to best manage the contribution issues in a law suit." 131 Cong. Rec. S. 11,857 (daily ed. Sept. 20, 1985) [emphasis added].

brought by the Government against these responsible persons. Because CERCLA liability is joint/several, the Government needs to sue only a limited number of responsible parties in order to recover all costs of cleanup and remedial operations at a site. With a right to contribution available to CERCLA defendants, they will be willing to undertake the burden to locate and implead other responsible persons into a CERCLA action in order to minimize their own liability. As the size of the defendant pool increases, the chances for settlement of the suit and achievement of one of the federal government's objectives under the Act—site cleanup at the expense of responsible parties—is met. In addition, a right to contribution, through its ability to encourage settlement, will cause a substantial reduction in the Government's CERCLA enforcement costs by eliminating the need for expensive and drawn out litigation.

Second, a CERCLA right to contribution implicates a unique federal interest insofar as it protects the Superfund's financial resources from depletion. The Hazardous Substance Response Trust Fund ("Superfund"), 42 U.S.C. § 9631, provides funds for several purposes. It enables the government to respond at sites where a release or threatened release of hazardous substances creates an "imminent and substantial danger to the public health or welfare," 42 U.S.C. § 9604. It also provides the funds from which those persons who have voluntarily incurred response costs can recover their expenditures pursuant to 42 U.S.C. § 9607(a)(4)(B). The Superfund is financed in substantial part by taxes assessed on the petroleum and chemical industries. In addition, a significant portion of the fund (12.5%) comes from general revenues.[11] *See*, "Superfund: Litigation and Cleanup", 16 *Environmental Reporter* (BNA) No. 9 at 4 (June 28, 1985).

A right to contribution protects the resources of the Superfund since it encourages private parties to cleanup hazardous sites for which they are responsible. Once the government identifies responsible parties at a particular landfill site, the defendants are more likely to assume the burden to abate the hazardous situation if they have available to them the ability to seek contribution for their expenditures from other responsible parties. The use of private funds to cleanup sites saves Superfund resources and enables those moneys to be used to remedy conditions at other inactive hazardous sites where responsible parties either cannot be identified or are judgment proof. In addition, where Superfund moneys have previously been spent at a site at which responsible parties have been identified, the incentive to settlement arising from a right to contribution insures quicker recovery of Superfund resources than would otherwise be achieved through the prolonged process of litigation between the Government and responsible defendants.

## CONCLUSION

CERCLA's legislative history, although sparce, does repeatedly indicate congressional approval of judicial establishment of a right to contribution. The Court finds significant federal interests implicated and enhanced by a right to contribution under the Act. The Court concludes, therefore, that a right to contribution exists under CERCLA as a matter of federal common law.

---

**11.** The tax authorization for the Superfund expired on September 30, 1985.