September 12, 1994
UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 93-2253

UNITED TECHNOLOGIES CORPORATION, ET AL.,
Plaintiffs, Appellants,

v.

BROWNING-FERRIS INDUSTRIES, INC., ET AL.,
Defendants, Appellees.

ERRATA SHEET

The opinion of the court issued on August 19, 1994 is
corrected as follows:

On page 4, last line delete citation

On page 5, line 11 change "in March, 1986" to "no later
than early 1987"

On page 5, lines 16, 17, 18 change sentence beginning with
"Here, . . . ." to "Here, the court entered the consent decree in
March of 1986 and remedial construction apparently started at the
Site within one year of that event."

On page 19 line 13 change "five" to "six"

For copy of appendix, please contact Clerk's Office.
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2253

UNITED TECHNOLOGIES CORPORATION, ET AL.,
Plaintiffs, Appellants,

v.

BROWNING-FERRIS INDUSTRIES, INC., ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Breyer,* Chief Judge,

Torruella and Selya, Circuit Judges.

Peter Buscemi, with whom Howard T. Weir, Thomas J. O'Brien,

Ellen B. Steen, Morgan, Lewis & Bockius, Jeffrey A. Thaler, and

Berman & Simmons, P.A. were on brief, for appellants.

Robert L. Gulley, with whom Samuel B. Boxerman, Sidley &

Austin, John A. Ciraldo, and Perkins, Thompson, Hinckley & Keddy

were on brief, for appellee Browning-Ferris Industries, Inc.
Arlyn H. Weeks and Conley, Haley & O'Neil on brief for

appellee Central Maine Power Co.
Edward E. Shea, Clayton A. Prugh, Elizabeth A. Bryson,

Windels, Marx, Davies & Ives, Nicholas M. Lanzilotta, and Colby &

Lanzilotta on brief for appellee Carleton Woolen Mills, Inc.

August 19, 1994

*Chief Judge Stephen Breyer heard oral argument in this matter
but did not participate in the drafting or the issuance of the

panel's opinion. The remaining two panelists therefore issue
this opinion pursuant to 28 U.S.C. 46(d).

SELYA, Circuit Judge. This appeal demands that we
SELYA, Circuit Judge.

clarify the relationship between cost recovery actions and

contribution actions under the Comprehensive Environmental

Response, Compensation and Liability Act (CERCLA), 42 U.S.C.

9601-9675 (1987), as amended by the Superfund Amendments and

Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 101 et

seq., 100 Stat. 1613 (1986). Having completed our task, we

affirm the district court's entry of summary judgment terminating

appellants' action as time-barred.

I. BACKGROUND

The essential facts are not in dispute. In 1981, after

discovering hazardous substance contaminants at a landfill in

Winthrop, Maine (the Site), the United States Environmental

Protection Agency (EPA) placed the Site on its national priority

list. The EPA and Maine thereafter undertook a concurrent

investigation and determined that Inmont Corporation, since

acquired by plaintiff-appellant United Technologies Corporation

(UTC),1 had conducted contamination producing activities at the

Site from 1950 to 1975.

In 1982, the EPA notified Inmont that it was liable,

under CERCLA, to clean up the Site. Several years of dilly-

dallying eventually gave way to negotiations among Inmont and

1UTC acquired Inmont in 1979 and transferred its ownership
to BASF Corporation (a UTC subsidiary) in 1985. Inmont then
merged into BASF. UTC and BASF brought this suit jointly, and
both appear here as appellants.

4

certain other potentially responsible parties (PRPs),2 on one

hand, and the appropriate federal and state officials, on the

second hand. The parties reached a tentative agreement and

prepared a consent decree. On January 29, 1986, the United

States filed a civil action against Inmont and others under

CERCLA, with a view toward securing a judicial imprimatur on the

proposed decree. The suit alleged that the named defendants were

jointly and severally liable for the costs the United States had

incurred, and would continue to absorb, in responding to releases

and threatened releases at the Site.

The district court promptly consolidated EPA's case

with a nearly identical case that Maine had filed against the

same defendants; and, on March 23, 1986, the court entered the

consent decree. Pursuant thereto, appellants agreed to undertake

and complete corrective work at the Site in accordance with a

plan for remedial action. The cleanup proved to be expensive:

appellants make the uncontradicted claim that remedial work cost

in excess of $13,000,000 to date, and that work yet to be done

likely will absorb an additional $20,000,000 or more. Appellants

also agreed to reimburse, and have since paid, the federal and

state sovereigns $475,000 for costs previously incurred with

respect to scouring the Site.

On October 16, 1992, appellants brought suit in federal

district court against several defendants, including Browning-

2The other PRPs were the Town of Winthrop, Everett Savage,
and Glenda Savage. None of them are involved in this appeal.

5

Ferris Industries, Inc. (Browning).3 In their complaint,

appellants posited claims under both federal and state law. They

alleged that the defendants were wholly or partially responsible

for contamination of the Site and sought three separate kinds of

relief, namely, (1) recovery of cleanup costs paid directly by

them (hereinafter "first-instance costs"); (2) recovery of monies

paid by them to reimburse the EPA and Maine for cleanup costs

(hereinafter "reimbursed costs"); and (3) a declaration of rights

in respect to liability for future response costs.

Browning moved for summary judgment, hypothesizing that

CERCLA's statute of limitations barred appellants' federal

claims, and that the pendent state claims should, therefore, be

dismissed for lack of jurisdiction. Appellants voluntarily

dismissed their claims regarding the reimbursed costs (apparently

believing such claims to constitute time-barred contribution

claims), but otherwise opposed the motion. A magistrate judge

recommended granting brevis disposition with respect to

appellants' remaining claims. The district court agreed. See

1993 WL 66007 (D. Me. May 27, 1993). This appeal followed.4

3The other named defendants included Carleton Woolen Mills,
Inc., Central Maine Power Company, Community Service Telephone
Co., Progressive Iron Works, Inc., and Quaker Lace Company.
Early in the proceedings, appellants voluntarily dismissed their
action against Quaker Lace. The remaining defendants appear here
as appellees.

4When Browning sought summary judgment, all the remaining
defendants followed suit. They ultimately achieved an identical
result. This proceeding embraces the district court's grant of
summary judgment in favor of all defendants. For ease in
reference we treat the appeal as if Browning alone were the
appellee, but our resolution of it applies with full force to all

6

II. ANALYSIS

CERCLA and SARA together create two different kinds of

legal actions by which parties can recoup some or all of the

costs associated with cleanups: cost recovery actions, see 42

U.S.C. 9607(a), and contribution actions, see id. 9613(f)(1).

Cost recovery actions are subject to a six-year statute of

limitations, see id. 9613(g)(2), while contribution actions

must be brought within half that time, see id. 9613(g)(3).5

In this case appellants' cause of action, no matter how

it is visualized, accrued no later than early 1987. Compare id.

9613(g)(2)(B) (providing that the trigger date for a cost

recovery action is fixed by the "initiation of physical on-site

construction of the remedial action") with id. 9613(g)(3)(B)

(providing that the accrual period for contribution actions

begins when a "judicially approved settlement" is entered).

Here, the court entered the consent decree in March of 1986 and

remedial construction started at the Site in the same month that

the court entered the consent decree, namely, March of 1986.

Appellants brought suit roughly five and one-half years

thereafter. Thus, the sole question presented on appeal is

whether appellants' action is an action for cost recovery or one

for contribution. If appellants' action qualifies under the

former rubric, it is timely; but, if it is properly classified

the other appellees.

5We set out the text of the centrally relevant statutes, 42
U.S.C. 9607(a), 9613(f) & 9613(g), in an appendix hereto.

7

under the latter rubric, it comes too late.

Because the issue on appeal turns on the correct

interpretation of the relevant statutory provisions, we exercise

de novo review. See United States v. Gifford, 17 F.3d 462, 472

(1st Cir. 1994) (holding that questions of law engender plenary

appellate review); Liberty Mut. Ins. Co. v. Commercial Union Ins.

Co., 978 F.2d 750, 757 (1st Cir. 1992) (same).

A. The Contours of Contribution.

Four portions of the statute are of immediately obvious

relevance. The only one of the four found in the original CERCLA

legislation is 42 U.S.C. 9607(a)(4). This proviso makes

enumerated parties "liable for . . . all costs of removal or

remedial action incurred by [government entities and] any other

necessary costs of response incurred by any other person

consistent with the national contingency plan." The other three

provisions originated in SARA and are all codified within 42

U.S.C. 9613. Under 42 U.S.C. 9613(f)(1), "[a]ny person may

seek contribution from any other person who is liable or

potentially liable" for response costs. The same section

contains two statutes of limitations. One provides that an

action for cost recovery must be commenced within six years of

the accrual date.6 Id. 9613(g)(2). The other provides that

"[n]o action for contribution for any response costs or damages

may be commenced more than 3 years after . . . the date of . . .

6This subsection speaks in terms "of the costs referred to
in [section 9607]." 42 U.S.C. 9613(g)(2).

8

entry of a judicially approved settlement with respect to such

costs or damages." Id. 9613(g)(3).

It is apodictic that our first recourse must be to

the statute's text and structure. See United States v. O'Neil,

11 F.3d 292, 295 (1st Cir. 1993); United States v. Charles George

Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987). Following this

path, it is evident that CERCLA differentiates between "action[s]

for recovery of . . . costs" and "action[s] for contribution."

Compare 42 U.S.C. 9613(g)(2) with id. 9613(g)(3). Although

Congress did not explicitly plot the boundary that divides these

two types of actions, we are not wholly without guidance. Under

accepted canons of construction, legal terms used in framing a

statute are ordinarily presumed to have been intended to convey

their customary legal meaning. See Bradley v. United States, 410

U.S. 605, 609 (1973) (holding that "the law uses familiar legal

expressions in their familiar legal sense") (citation omitted);

MCA, Inc. v. Wilson, 677 F.2d 180, 186 (2d Cir. 1981) (similar);

see also 2A Norman J. Singer, Sutherland Stat. Const. 47.30, at

262 (5th ed. 1992). This precept has special force when, as now,

there is no persuasive evidence that Congress aspired to use a

particular legal term in some unusual or unorthodox sense.

This canon measurably assists our effort to ascribe

meaning to the word "contribution." Contribution is a standard

legal term that enjoys a stable, well-known denotation. It

refers to a claim "by and between jointly and severally liable

parties for an appropriate division of the payment one of them

9

has been compelled to make." Akzo Coatings, Inc. v. Aigner

Corp., F.3d , (7th Cir. 1994) [1994 U.S. App. LEXIS

17028 at *5]; accord Northwest Airlines, Inc. v. Transport

Workers Union, 451 U.S. 77, 87-88 (1981); In re "Agent Orange"

Prod. Liab. Litig., 818 F.2d 204, 207 (2d Cir. 1987); see also

Black's Law Dictionary 399 (6th ed. 1990) (defining contribution

as a right "of one who has discharged a common liability to

recover of another also liable, the aliquot portion which he

ought to pay or bear").7 Accordingly, absent evidence that

Congress had a different, more exotic definition in mind, we are

inclined, in parsing 42 U.S.C. 9613, to give the word

"contribution" its generally accepted legal meaning.

The relevant external considerations counsel in favor

of this usage and, thus, solidify our inclination. Perhaps most

important, ascribing a traditional meaning to the term

"contribution" fits both CERCLA's language and its structure.

Under such a reading, the two statutes of limitations complement

each other and together exhaust the types of actions that might

be brought to recoup response costs: the shorter prescriptive

period, contained in 42 U.S.C. 9613(g)(3), governs actions

brought by liable parties during or following a civil action

7Most states have adopted contribution provisions that
operate along substantially similar lexicographical lines. See

Northwest Airlines, 451 U.S. at 87 n.17 (collecting exemplars).

This is an important datum because CERCLA's legislative history
evinces an intent that courts establish the scope and nature of
CERCLA liability consistent with evolving principles of law.
See, e.g., 126 Cong. Rec. 30,932 (1980) (statement of Sen.

Randolph); 126 Cong. Rec. 31, 965 (1980) (statement of Rep.
Florio).

10

under 42 U.S.C. 9606-9607(a), while the longer statute of

limitations, contained in 42 U.S.C. 9613(g)(2), addresses

actions brought by innocent parties that have undertaken cleanups

(say, the federal, state or local government).8

This reading fits especially well with the language of

42 U.S.C. 9613(g)(2), which concerns actions for "recovery of

the costs." That phrase, reiterative of the subsection heading

"Actions for recovery of costs," suggests full recovery; and it

is sensible to assume that Congress intended only innocent

parties not parties who were themselves liable to be

permitted to recoup the whole of their expenditures. By

contrast, 42 U.S.C. 9613(g)(3) allows a "non-innocent" party

(i.e., a party who himself is liable) only to seek recoupment of

that portion of his expenditures which exceeds his pro rata share

of the overall liability in other words, to seek contribution

8It is possible that, although falling outside the statutory
parameters established for an express cause of action for
contribution, see 42 U.S.C. 9613(f)(1), a PRP who spontaneously

initiates a cleanup without governmental prodding might be able
to pursue an implied right of action for contribution under 42
U.S.C. 9607(c). See Key Tronic Corp. v. United States, 114 S.

Ct. 1960, 1966 (1994) (explaining that CERCLA now "expressly
authorizes a cause of action for contribution in [ 9613] and
impliedly authorizes a similar and somewhat overlapping remedy in
[ 9607]"); cf. In re Hemingway Transp., Inc., 993 F.2d 915, 931

(1st Cir.) (stating in dictum that "in the event the private-
action plaintiff itself is potentially `liable' to the EPA for
response costs, and thus is akin to a joint `tortfeasor,' section
9607(a)(4)(B) serves as the pre-enforcement analog to the

`impleader' contribution action permitted under section
9613(f)"), cert. denied, 114 S. Ct. 303 (1993). If, indeed, the

law allows such an implied right of action for contribution to be
maintained a matter on which we take no view it is unclear to
us whether such a cause of action would be subject to the three-
year or the six-year prescriptive period. Because this appeal
does not pose that question, we leave it for another day.

11

rather than complete indemnity. The statutory language thus

suggests that cost recovery and contribution actions are distinct

and do not overlap.

The pre-SARA caselaw and SARA's legislative history

dovetail to furnish strong support for imputing a traditional

meaning to the term "contribution" as it appears in 42 U.S.C.

9613. As originally written, CERCLA gave the EPA several

remedial choices. For example, it could (1) clean up a

contaminated site and then sue to recover its response costs, see

id. 9607(a)(4), (2) endeavor to compel a PRP to perform a

cleanup by administrative order, or, if the PRP proved

recalcitrant, by obtaining a judicial decree, see id. 9606, or

(3) negotiate a settlement, see id. 9622. Despite this array

of weapons, however, CERCLA was and still is silent as to the

extent of a particular PRP's liability. Judges abhor vacuums;

and the courts filled this lacuna in the statute, reading CERCLA

as imposing joint and several liability on the part of all

responsible parties to reimburse the government for cleanup

expenses and to pay response costs. See, e.g., In re Hemingway

Transp., Inc., 993 F.2d 915, 921 (1st Cir.), cert. denied, 114 S.

Ct. 303 (1993); O'Neil v. Picillo, 883 F.2d 176, 178 (1st Cir.

1989), cert. denied, 493 U.S. 1071 (1990).

Notwithstanding the presumed existence of joint and

several liability, there was much uncertainty prior to SARA's

passage as to whether a responsible party could recover from

other PRPs the portion of its cleanup costs that exceeded its pro

12

rata share. See, e.g., United States v. New Castle County, 642

F. Supp. 1258, 1262 (D. Del. 1986) (noting uncertainty).

Although most courts ultimately ruled that section 9607 conferred

an implied right of action for contribution in favor of a PRP

that paid more than its ratable share, see, e.g., O'Neil, 883

F.2d at 179; Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454,

1457 n.3 (9th Cir. 1986), the situation was clouded by the

Court's refusal to imply rights of action under other statutes in

the absence of an express direction from Congress, see, e.g.,

Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630,

639-40 (1981) (declining to imply right of action for

contribution under the antitrust laws); Northwest Airlines, 451

U.S. at 91-95 (finding no implied right to contribution under

either the Equal Pay Act of 1963 or Title VII of the Civil Rights

Act of 1964).

This background brings the origins of SARA into sharp

focus. A principal goal of the new section 9613 was to

"clarif[y] and confirm[] the right of a person held jointly and

severally liable under CERCLA to seek contribution from other

potentially liable parties, when the person believes that it has

assumed a share of the cleanup or cost that may be greater than

its equitable share under the circumstances." S. Rep. No. 11,

99th Cong., 1st Sess. 44 (1985), reprinted in 2 Legislative

History of the Superfund Amendments and Reauthorization Act of

1986, 636, Sp. Print 101-120 (101st Cong., 2d Sess.) (1990); see

also 131 Cong. Rec. 24,450 (1985) (statement of Sen. Stafford)

13

(predicting that section 9613 would "remove[] any doubt as to the

right of contribution"). Of paramount significance for present

purposes is that Congress, in enacting SARA, sought to codify the

case law, see O'Neil, 883 F.2d at 179 and the cases decided to

that point, without exception, employed the legal term

"contribution" in its traditional sense to cover an action by one

liable party against another liable party. See, e.g., Bulk

Distrib. Ctrs., Inc. v. Monsanto Co., 589 F. Supp. 1437, 1442-44

(S.D. Fla. 1984); Jones v. Inmont Corp., 584 F. Supp. 1425, 1428-

29 (S. D. Ohio 1984).

Taken in the aggregate, this impressive collection of

signposts canons of construction, other CERCLA language, the

statute's structure, the state of the case law antedating SARA's

passage, and SARA's legislative history point squarely to a

conclusion that Congress used the word "contribution" in the

conventional sense, and fully intended courts to give the word

its customary meaning. The authorities so hold. See Akzo

Coatings, F.3d at [1994 U.S. App. LEXIS 17028 at *7];

Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989);

Avnet, Inc. v. Allied-Signal, Inc., 825 F. Supp. 1132, 1137-38

(D.R.I. 1992); Transtech Indus., Inc. v. A & Z Septic Clean, 798

F. Supp. 1079, 1086 (D.N.J. 1992), appeal dism'd, 5 F.3d 51 (3d

Cir. 1993), cert. denied, 114 S. Ct. 2692 (1994); see also Key

Tronic Corp. v. United States, 114 S. Ct. 1960, 1965-66 (1994)

(observing that section 9613(f) expressly created a cause of

action permitting a responsible party to seek contribution from

14

other PRPs).

Applying this legal regime to the facts at hand, and

bearing in mind that appellants are by their own admission liable

parties, their claim against Browning must be classified as an

action for contribution. Hence, unless the claim can otherwise

be saved, it will fall prey to the three-year bar of 42 U.S.C.

9613(g)(3).

B. The Statutory Interface.

Appellants argue that, notwithstanding section

9613(f)(3), the broad, unqualified language to the effect that

responsible parties shall be liable to "any other person," 42

U.S.C. 9607(a)(4), provides an alternative avenue for the

maintenance of their suit. If this is so, appellants add, the

six-year statute of limitations found in section 9613(g)(2),

pertaining to actions for "recovery of the costs referred to in

[ ] 9607" must govern in this instance.

At face value, this expansive reading of section 9607

is untenable; carried to its logical extreme, such a reading

would completely swallow section 9613(g)(3)'s three-year statute

of limitations associated with actions for contribution. Since

courts must strive to give effect to each subsection contained in

a statute, indeed, to give effect to each word and phrase, see

United States v. Nordic Village, Inc., 112 S. Ct. 1011, 1015

(1992); United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52

(1st Cir. 1985), we refuse to follow a course that ineluctably

produces judicial nullification of an entire SARA subsection.

15

Recognizing this looming obstacle, appellants attempt

to skirt it by lowering their sights and, thus, preserving some

semblance of utility for 42 U.S.C. 9613(g)(3). In this vein,

they focus on the phrase "incurred by," as used in 42 U.S.C.

9607(a), and asseverate, based on this language, that section

9607(a) only covers actions to recoup cleanup costs directly paid

for (i.e., "incurred") by a responsible party (what we have

termed first-instance costs, see supra p. 4). If this

construction were adopted, then an action for recoupment of sums

paid by a responsible party to a government agency to compensate

it, pursuant to a settlement or judgment, for the funds it

expended in cleaning up a site (what we have termed reimbursed

costs, see supra p. 4), would lie under section 9613(f), but not

under section 9607(a). Hence, section 9613(g)(3) would retain

some measure of vitality, for an action by a responsible party

against other PRPs to recover that portion of the reimbursed

costs paid by the former in excess of its pro rata share would

constitute a contribution claim, subject to the three-year

prescriptive period.9

We are not persuaded by this sleight of hand. For one

thing, appellants' reading depends on excerpting phrases from

section 9607(a) without due regard for the statute's overall

9As an example, appellants suggest that an attempt to
recover some part of the $475,000 payment they made to compensate
the EPA and Maine for the latters' cleanup expenditures would be
subject to the three-year limitations period, while an attempt to
recover a portion of the response costs ($13,000,000 to date)
paid directly by appellants could be brought under section
9607(a) and come within the six-year limitations period.

16

content. The full text of the relevant subsection, reproduced in

the appendix infra, makes selected parties liable for "any other

necessary costs of response incurred by any other person." This

unqualifiedly broad language comfortably accommodates all

response costs incurred by a private party, not just first-

instance costs. In a nutshell, accepting appellants' position

would require us to read section 9607's language ("any other

necessary costs") as containing an implicit qualification:

"except for monies paid to reimburse government entities' cleanup

costs." There is simply no rhyme or reason for reading that

condition into what appears on its face to be a straightforward

statutory directive. See, e.g., CIA v. Sims, 471 U.S. 159, 169-

70 (1985) (refusing to read limitations into broad and

unconditional statutory language). Under the reading that we

adopt, by contrast, the unqualified language "any other necessary

costs" remains as Congress wrote it, that is, without

qualification.10 We think that this reading is preferable.

For another thing, appellants' tracing of the statutory

interface is wholly dependent on an unusually cramped reading of

the term "contribution." Under appellants' theory, the term

refers only to reimbursed costs. This artificial circumscription

entirely omits from the sweep of section 9613 what might be

called "traditional" contribution actions. We know of no other

court that has given such an odd definition to the term

10As discussed above, see supra p. 11, 42 U.S.C.

9613(f)(1) explicitly confirms the cause of action for
contribution that is implicit in the language of 9607(a).

17

"contribution" in this or any other context; and, though we

recognize that we are not bound to interpret the word as it is

defined by state law, see 42 U.S.C. 9613(f)(1) (providing that

claims for contribution "shall be governed by Federal law"), the

responsibility to develop federal common law is not a license to

override policy choices made by the Congress or to create

newfangled definitions for no better reason than that they suit a

party's convenience or strike a judge's fancy. The meaning to be

attributed to terms governed by federal law must, at the very

least, comport with the statutory scheme in which such terms

appear, and, wherever possible, effectuate discernible

congressional intent. Put bluntly, a court cannot rewrite a

statute by the simple expedient of calling a camel a horse,

overlooking obvious humps.

Appellants' suggested interpretation fails this

commonsense test on two grounds. First, 42 U.S.C. 9613 itself

appears to reject any distinction for the purposes of

contribution between first-instance costs and reimbursed costs.

After all, subsection 9613(f)(3)(B) authorizes a party to seek

contribution "for some or all of the response action or for some

or all of the costs of such action . . ." The simple reading of

this subsection is that the initial phrase refers to expenses

incurred in the course of a liable party's direction of a site's

cleanup while the second phrase refers to reimbursement of

cleanup costs incurred under the government's hegemony.

The legislative history confirms this explanation. In

18

formulating SARA, the Senate Committee on Environment and Public

Works viewed what is now section 9613(f) as intended to permit an

action for contribution when a party believed that it had

"assumed a share of the cleanup or cost that may be greater than

its equitable share." S. Rep. No. 11, supra. By like token, the

House Committee on Energy and Commerce stated that contribution

could be had under section 9613(f) by parties "who settle for all

or part of a cleanup or its costs . . ." H.R. Rep. No. 253, pt.

1, 99th Cong., 2d Sess. 80 (1985), reprinted in 1986 U.S.C.C.A.N.

2835, 2862. These statements show beyond serious question that

the drafters intended contribution, as that term is used in

section 9613, to cover parties' disproportionate payments of

first-instance costs as well as parties' disproportionate

payments of reimbursed costs.

Second, appellants' construction emasculates the

contribution protection component of CERCLA's settlement

framework. CERCLA seeks to provide EPA with the necessary tools

to achieve prompt cleanups. See United States v. Cannons

Engineering Corp., 899 F.2d 79, 90-91 (1st Cir. 1990). One such

tool is the ability to foster incentives for timely settlements.

See id. To this end, 42 U.S.C. 9613(f)(2) provides that a

party who settles with the government "shall not be liable for

claims for contribution regarding matters addressed in the

settlement." Because only the amount of the settlement, not the

pro rata share attributable to the settling party, is subtracted

from the aggregate liability of the nonsettling parties, see id.,

19

section 9613(f)(2) envisions that nonsettling parties may bear

disproportionate liability. This paradigm is not a scrivener's

accident. It "was designed to encourage settlements and provide

PRPs a measure of finality in return for their willingness to

settle." Cannons Engineering, 899 F.2d at 92; see also H.R. Rep.

No. 253, supra, 1986 U.S.C.C.A.N. at 2862.

This mechanism for encouraging settlement would be

gutted were courts to share appellants' view of the contribution

universe, for subsection 9613(f)(2) then would afford very little

protection. Although the subsection still would prevent a

settlor from being sued by another responsible party claiming

that the first settlor paid less than its ratable share of the

government's expenses (what we have termed "reimbursed costs"),

the statutory shield would not extend beyond that point. Most

disturbingly, if a party's direct, first-instance payments are

not grist for the contribution mill, but, instead, are to be

treated as recovery costs within the purview of section 9607(a),

a nonsettling or later-settling PRP would be entitled to bring an

action against a responsible party who settled at the earliest

practicable moment, but paid less than his ratable share of the

aggregate first-instance payments. Exposing early settlors who

make first-instance payments to later contribution actions not

only would create a needless asymmetry in the treatment of first-

instance costs as opposed to reimbursed costs, but also would

greatly diminish the incentive for parties to reach early

settlements with the government, thereby thwarting Congress's

20

discernible intent.11 This result makes little sense, and,

therefore, we reject appellants' tortured construction of the

statutory language.

III. CONCLUSION

The word "contribution" for purposes of 42 U.S.C.

9613(f) should be given its plain meaning. Adapted to an

environmental case, it refers to an action by a responsible party

to recover from another responsible party that portion of its

costs that are in excess of its pro rata share of the aggregate

response costs (including both first-instance costs and

reimbursed costs). Applying this definition, the instant action

clearly qualifies as an action for contribution under section

9613(f)(1). And because CERCLA's text indicates that

contribution and cost recovery actions are distinct, non-

overlapping anodynes,12 the action had to be commenced within

three years of its accrual. See 42 U.S.C. 9163(g)(3).

We need go no further. Appellants did not deign to sue

until some six and one-half years after entry of the consent

11It bears mention that CERCLA's contribution protection
provisions also would be undermined if cost recovery actions were
deemed to be overlapping with contribution actions.

12Envisioning contribution and cost recovery actions as non-
overlapping is perfectly consistent with the Court's recent
determination that 42 U.S.C. 9613 and 9707(a) create "similar
and somewhat overlapping" actions for contribution. Key Tronic,

114 S. Ct. at 1966. The Key Tronic Court was discussing two

different species of contribution actions and expressed no views
anent the relation between contribution and cost recovery
actions.

21

decree. Their suit is, therefore, time-barred.13

Affirmed.

13The court below reached the same result based on somewhat
different reasoning. While its rationale strikes us as
problematic, we see little point in tilting at windmills. An
appellate court is not chained to the lower court's reasoning,
but may affirm the judgment below on any independently sufficient
basis made manifest by the record. See Garside v. Osco Drug,

Inc., 895 F.2d 46, 49 (1st Cir. 1990); Polyplastics, Inc. v.

Transconex, Inc., 827 F.2d 859, 860-61 (1st Cir. 1987). Thus, we

endorse the result reached below solely for the reasons stated
herein.

22