**SAND SPRINGS HOME, Plaintiff,**

v.

**INTERPLASTIC CORPORATION; General Electric Company; Reid Supply Company, Inc.; Boeing Military Airplane Company, a division of the Boeing Company; Cessna Aircraft Company; and Does 1–50, inclusive, Defendants.**

No. 86–C–85–B.

United States District Court,
N.D. Oklahoma.

March 3, 1987.

William C. Anderson, James P. McCann, Tulsa, Okl., for plaintiff.

Richard M. Klinge, Holloway, Dobson, Hudson & Bachman, Oklahoma City, Okl., for defendant, Reid Supply.

Kenny Joe Smith, Chapel, Wilkenson, Riggs, Abney & Henson, Tulsa, Okl., Stanley A. Reigel, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., for defendant, Cessna Aircraft Co.

Ronald N. Ricketts, Gable & Gotwals, Tulsa, Okl., for defendant, Boeing Military Aircraft Co.

ORDER

BRETT, District Judge.

This matter comes before the Court on the Motion for Summary Judgment and in

the Alternative Motion for Partial Summary Judgment of the Defendant, Reid Supply Company, Inc. For the reasons set forth below, the Motion for Summary Judgment is denied. The Alternative Motion for Partial Summary Judgment is granted.

Plaintiff Sand Springs Home (the "Home") herein seeks recovery of money against the named Defendants for certain "response costs" incurred by the Plaintiff pursuant to an administrative order issued by the United States Environmental Protection Agency ("EPA") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq. "Response costs" are costs imposed on a party under CERCLA for cleanup of a hazardous waste dump site. CERCLA defines such costs as: "(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release." A national contingency plan is a plan devised by the President for removal of oil and hazardous substances from the environment.

Plaintiff is the owner of certain real property located in Tulsa County, Oklahoma, which was leased to various parties who used the site for the operation of a facility for storage, treatment, disposal or recycling of chemical wastes and by-products. In March 1984, Plaintiff was served with an administrative order by the United States Environmental Protection Agency requiring certain specified cleanup activities at the site, including, among other things, proper cleanup, removal, and disposal of a quantity of chemical wastes then stored in drums and tanks at the site, which the EPA had found presented an emergency situation involving "an imminent and substantial endangerment to the public health or welfare and environment by releases or threatened releases of haz-ardous substances as defined in § 101(14) of CERCLA." Plaintiff requested that EPA join the generators of the chemical materials in question as additional respondents in said administrative proceedings. EPA declined, citing the emergency nature of the situation and the fact it would require a lengthy time period to identify and join the generators in such proceedings. Between March 1984 and late spring of 1985, Plaintiff paid for said surface cleanup at a cost of $521,773.66. Plaintiff proposes to absorb 15% of the total cleanup costs as its fair and equitable share thereof. Plaintiff has made demand on the generators it has identified to contribute to the Home, as their fair and equitable share of said cleanup costs, the remaining 85%.

Defendant Reid seeks summary judgment in this matter on two theories. First, that CERCLA does not provide for joint and several liability among responsible parties. Second, that CERCLA does not create a private right of action among responsible parties for contribution. These contentions will be addressed separately below.

Summary judgment must be denied if a genuine issue of material fact is presented to the trial court. *Exnicious v. United States*, 563 F.2d 418, 425 (10th Cir.1977). In making this determination, the Court must view the evidence in the light most favorable to the party against whom judgment is sought. *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.*, 555 F.2d 778, 784 (10th Cir.1977). Factual inferences tending to show triable issues must be resolved in favor of the existence of those issues. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir.1980). The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact regarding the legal dispute, that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials contained in his pleading. The nonmovant must set forth specific facts with supporting material showing that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477

U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Windon Third Oil and Gas v. Federal Deposit Insurance Corp.*, 805 F.2d 342 (10th Cir.1986).

■ Defendant Reid Supply Company, Inc. ("Reid") first contends that CERCLA does not provide for joint and several liability among parties held responsible for hazardous waste cleanup costs. Reid cites the legislative history of CERCLA to the effect that while both the original House and Senate versions of the Act contained language specifically mandating joint and several liability for all responsible parties, the ultimate bill adopted by Congress deleted such joint and several liability standard language. Reid contends that since the ultimate bill adopted by Congress deleted such language, Congress did not intend for CERCLA to provide for joint and several liability among responsible parties. A number of courts, however, have held to the contrary. *United States v. Chem-dyne Corp.*, 572 F.Supp. 802 (S.D.Ohio 1983); *State of Colo. v. Asarco, Inc.*, 608 F.Supp. 1484 (D.C.Colo.1985); *United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 n. 13 (2nd Cir.1985). *Chem-dyne, supra,* specifically addressed the legislative history argument. Chief Judge Rubin concluded:

"A reading of the entire legislative history in context reveals that the scope of liability and term joint and several liability were deleted to avoid a mandatory legislative standard applicable in all situations which might produce inequitable results in some cases. The deletion was not intended as a rejection of joint and several liability. Rather, the term was omitted in order to have the scope of liability determined under common law principles, where a court performing a case by case evaluation of the complex factual scenarios associated with multiple-generator waste sites will assess the propriety of applying joint and several liability on an individual basis." (citations omitted.)

Chief Judge Rubin also concluded that federal, rather than state, common law should be developed and applied and that under federally created uniform law defendants causing an indivisible harm are subject to joint and several liability. *Asarco, supra,* at 1486 (quoting *Chem-dyne, supra,* at 808–811). Reid contends that *Chem-dyne* only addressed the standard of liability between the United States as the representative of the public interest under CERCLA and numerous defendants who were allegedly responsible parties under the Act. Reid contends that *Chem-dyne* and its progeny have no application to this case because the Plaintiff admits it is a responsible party under CERCLA and not an innocent victim of an alleged hazardous release. 42 U.S.C. § 9607 designates three categories of "responsible persons" under the Act: (1) present and former owners of hazardous substances disposal sites; (2) transporters of hazardous substances, and (3) those who arrange for the transport or disposal of hazardous substances. These groups of persons are liable for three types of costs incurred as a result of a release or threatened release of hazardous substances: (1) governmental response costs, (2) private response costs incurred "by any other person" consistent with the National Contingency Plan, and (3) damage to natural resources. Reid's argument that joint and several liability does not apply between responsible parties under CERCLA is not new. In *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135 (E.D.Penn. 1982), the defendant contended that the term "any other person" as used in § 9607(a)(4)(B) does not include a party which itself is subject to liability under the Act. The court specifically rejected this argument. *Id.* at 1142. *City of Philadelphia* is directly analogous to the instant case. There, the City of Philadelphia owned and operated a landfill where hazardous wastes had been illegally dumped. Defendant was a generator of the hazardous substances and contracted for their disposal. The court found that had the federal or state government undertaken to clean up the landfill site, both the City of Philadelphia and the defendant would argu-

ably have been liable for their share of cleanup costs under CERCLA. The same is true in the instant case. Plaintiff Sand Springs Home is the owner of the hazardous waste disposal site. Defendant Reid is alleged to be one of the generators of those hazardous wastes. Had the federal or state government undertaken to clean up the Sand Springs Home site, these parties arguably would have been liable for their share of costs under CERCLA. However, as in *City of Philadelphia*, this did not occur. Instead, Plaintiff herein undertook the cleanup and now contends that Defendant Reid is liable for its share of those costs. In *City of Philadelphia*, the court found that the language of CERCLA, its legislative history, and its environmental objectives did not preclude the plaintiff's claim for recovery of a portion of the cleanup costs. The Court finds the same reasoning applies herein. The Court finds that under 42 U.S.C. § 9607(a)(4)(B), a private party, even though a responsible party under CERCLA, who voluntarily pays CERCLA response costs may bring an action in its own behalf to collect cleanup costs against the parties allegedly responsible for the production and dumping of hazardous wastes.

■ Defendant Reid next contends that there is no private right of contribution among responsible parties under CERCLA. The Court concludes that this contention is also without merit. Extensive discussion of this issue is contained in *United States v. New Castle County*, 642 F.Supp. 1258, 1262–69 (D.Del.1986). There the court noted that a right of contribution if it exists in a framework of a particular statutory scheme must be created in one of two ways. First, through affirmative creation of a right of action by Congress, either expressly or by clear implication, or, second, through the power of federal courts to fashion a federal common law of contribution. *Id.* at 1262; *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981); *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 90–91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981). In *New Castle County*, the court found that Con-

gress empowered the federal courts to establish a federal common law of contribution under CERCLA. *New Castle County, supra*, at 1265. The court specifically found that CERCLA's legislative history supports creation of a federal common law right to contribution. *Id.* at 1266–68. The court also found that the presence of substantial federal interests supports a federal common law right to contribution under CERCLA. *Id.* at 1268–69. This Court finds the reasoning of *New Castle County* persuasive. Although CERCLA contains no explict provision authorizing contribution, 42 U.S.C. § 9607(e)(2) preserves such contribution claims to the extent that the common law provides a right to such actions. *New Castle County* at 1265; *Asarco, supra*, at 1492. CERCLA's legislative history establishes congressional support for a judicially created right to contribution. Although the Senate version of the bill which would become CERCLA eliminated express references to joint and several liability, this did not suggest abandonment of this or other liability provisions not expressly contained in the bill. *New Castle County* at 1267. As U.S. Rep. Florio noted, "The terms joint and several have been deleted with the intent that the liability of joint tortfeasors be determined under common or previous statutory law." 126 Cong. Rec.H. 11,787 (Daily Ed. December 3, 1980). *See, New Castle County* at 1267 n. 9. Recent legislative developments indicate that Congress has considered an amendment to CERCLA including an express right to contribution in order to clarify confusion on the issue. *See, New Castle County* at 1267–68. As the court in *New Castle County* noted, a right to contribution under CERCLA enhances federal interests in two substantial ways. First, a right to contribution would encourage expeditious settlement of Superfund suits brought by the government against responsible persons. *New Castle County* at 1268–69. Second, a right to contribution would also help protect the Superfund's financial resources from depletion. *New Castle County* at 1269. Numerous courts have held that a right to contribution does

exist under CERCLA. Only one court has held that there is no right to contribution under CERCLA. *United States v. Westinghouse Electric Corp.*, 22 E.R.C. 1230, 1234 (S.D.Ind.1983). In that case, Defendant Westinghouse sought to file a third party complaint against Monsanto Company. However, as the court noted in *Asarco, supra*, it does not appear that Monsanto, although the manufacturer of the hazardous substance PCB, was a responsible party under § 106 or § 107 of CERCLA. Thus, contribution would not be available since joint liability could not be imposed. The Court concludes that *Westinghouse* does not stand for the proposition that contribution is never available under CERCLA. The Court concludes that contribution is available under CERCLA where joint liability is established. For these reasons, Defendant Reid's Motion for Summary Judgment is denied.

■ Finally, Defendant Reid contends that if the Court finds that a private right of action for contribution exists under CERCLA, the proper standard for contribution is that contained in Restatement Second of Torts § 886A. Plaintiff agrees that this section is applicable herein. Therefore, the parties do not disagree that § 886A governs the mechanics of contribution under CERCLA. For this reason, Defendant Reid's Motion for Partial Summary Judgment on this issue is granted. The parties apparently disagree, however, on the precise manner in which the principles contained in § 886A are to be applied to this case. Resolution of this issue, however, will turn on factual issues concerning whether other joint tortfeasors' share of the response costs herein are collectible. Therefore, final resolution of this question is inappropriate at this time.

For the reasons stated herein, Defendant Reid's Motion for Summary Judgment is denied. Defendant Reid's Motion for Partial Summary Judgment that § 886A of Restatement Second of Torts governs the mechanics of contribution under CERCLA, is granted.

IT IS FURTHER ORDERED that this matter is set for jury trial on April 20, 1987, at 9:30 a.m. Suggested voir dire and instructions and any trial briefs are to be filed by April 13, 1987. An Agreed Pre-Trial Order is to be filed by April 6, 1987. Parties should exchange all pre-marked exhibits at that time. Discovery cutoff is March 30, 1987. The parties are to exchange the names and addresses of all witnesses by March 18, 1987. Parties should include a brief description of the testimony of any witness whose deposition has not been taken by that time.