**RICHLAND–LEXINGTON AIRPORT DISTRICT, Plaintiff–Appellant,**

v.

**ATLAS PROPERTIES, INC., d/b/a Carolina Chemicals, Defendant–Appellee.**

**No. 89–2624.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1989.

Decided April 24, 1990.

As Amended May 9, 1990.

---

Robert Julian Thomas (argued), Clifford O. Koon, Jr. and V. Jean Burkins (on brief), Rogers, Thomas, Cleveland, Koon, Waters & Tally, Columbia, S.C., for plaintiff-appellant.

Frank Rogers Ellerbe, III (argued) and D. Reece Williams, III (on brief), Robinson, McFadden & Moore, P.C., Columbia, S.C., for defendant-appellee.

Before WIDENER and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Richland–Lexington Airport District (Airport) appeals from the district court's entry of judgment notwithstanding the verdict in a case in which it sought to recover costs incurred in removal of hazardous wastes from its property. Airport argues that the district court erred in holding that government approval for a cleanup is a prerequisite to private cost recovery under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 *et seq.*, in holding that the state agency did not approve Airport's cleanup plan, and in holding that the contract between Airport and Carolina Chemicals, the producer of the waste, prevented recovery. We are of opinion that the district court erred both in its holding that government approval is a prerequisite to private cost recovery under those parts of CERCLA at issue here and that the contract between the parties prevented recovery. We reverse and remand for the district court to reinstate the jury verdict and enter judgment thereupon.

The Airport District operates the Columbia Metropolitan Airport near Columbia, South Carolina. Carolina Chemicals blends chemicals for use as agricultural pesticides and operated a plant on the perimeter of Airport property and adjacent thereto. At some point, Carolina Chemicals began to dump emptied pesticide containers, bags and drums, in a pit operated by Airport as a private dump. Beginning May 15, 1956, Airport began to charge Carolina Chemicals twenty-five dollars a month to allow it to so dispose of the containers. Carolina Chemicals continued to use the Airport dump until 1962. Eventually, the containers Carolina Chemicals dumped deteriorated, and chemical residues[1] got into the soil and the ground water of the Airport's property. In 1981, the South Carolina Department of Health and Environmental Control (the Department), the South Carolina agency charged with enforcement of CERCLA, cited Carolina Chemicals and Airport for discharging hazardous wastes into the environment without a Department permit.[2] At a meeting between the Depart-

1. The primary hazardous materials involved were Lindane, Toxaphene and DDT.

2. Carolina Chemicals contested its liability under the South Carolina statute, and the South Carolina Court of Appeals found that Carolina Chemicals was not in violation of the state statute because all of its actions were completed before the state law was enacted. See *Carolina Chemicals Inc. v. South Carolina Department of Health and Environmental Control,* 290 S.C. 498, 351 S.E.2d 575 (App.1986).

ment, Airport and Carolina Chemicals, it was determined by the Department that a study funded by Airport and Carolina Chemicals should be conducted to study the extent of the problem. In the next several meetings between the Department and Airport, Airport was informed by the Department that the source of the pollution would have to be removed. In an October 3, 1984 notice of a meeting from the Department, the Airport District was informed that "[t]he recommendation that the pesticide bags be removed is acceptable and recognized as a necessity". Airport spent a considerable sum removing the hazardous wastes from its property and sued Carolina Chemicals under CERCLA and state law claims of trespass, nuisance, strict liability and subrogation. The case was tried before a jury which returned its general verdict for Airport, under CERCLA, as well as the other theories of recovery, in the amount of $293,064. The district court, however, granted Carolina Chemicals judgment notwithstanding the verdict on the ground that Airport did not have prior government approval of the cleanup operation, which the district court ruled was required as a prerequisite to the prosecution of this private suit under CERCLA, and on the ground that the contractual relationship between Airport and Carolina Chemicals prevented recovery. Airport appealed.[3]

◼ Airport first argues that the district court was in error in requiring prior government approval before allowing a private suit to recover the cost of a cleanup under CERCLA. Although there is no language in CERCLA which would require prior government involvement or approval as a prerequisite to the prosecution of a suit, some courts have found that such a requirement is implied in the 1982 National

Contingency Plan (Plan). See *Artesian Water Co. v. New Castle County*, 605 F.Supp. 1348 (D.Del.1985); *Bulk Distribution Centers, Inc. v. Monsanto Co.*, 589 F.Supp. 1437 (S.D.Fla.1984). The argument goes that since 42 U.S.C. § 9607(a)(4)(B) requires that costs be incurred "consistent with the national contingency plan" to be recoverable, that implies prior approval by the government as a prerequisite to recovery of cleanup costs if required by the Plan. In this connection, the Environmental Protection Agency (EPA) revised the National Contingency Plan in 1985, and made it "absolutely clear" that the lead agency does not have to evaluate and approve a response action for cleanup costs under 42 U.S.C. § 9607 such as those involved here to be recovered from a responsible party pursuant to CERCLA. EPA 1985 National Contingency Plan, 50 Fed.Reg. 47,912 at 47,934 (1985). The 1985 Proposed National Contingency Plan states that it has added § 300.71(a)(3) into the Code of Federal Regulations to clarify what "consistent with the NCP" means for the purpose of cost collection under 42 U.S.C. § 9607. 50 Fed. Reg. 5870 (1985). Airport argues that the 1982 Plan, in effect at the time of this cleanup, never required prior government approval as shown by the 1985 Plan's statement that it clarifies the 1982 National Contingency Plan. The Ninth Circuit addressed the precise issue before us in *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 891–92 (9th Cir.1986). In its opinion, the court gave deference to the EPA's interpretation of its own 1982 Plan and rejected any requirement of governmental approval before a private suit can be brought under 42 U.S.C. § 9607 of CERCLA. We find *Wickland* persuasive, and we agree that governmental approval

---

**3.** The case was submitted to the jury not only on the basis of CERCLA but on the basis of trespass, nuisance, strict liability and subrogation. The last four of these theories mentioned are not argued on appeal. So far as the verdict may have been based on them, it was set aside because "the contract between the parties impacts on RLAD's [Airport's] right to obtain relief from Carolina Chemicals on these issues, and the verdict thereon cannot stand."

Since the only legal theory discussed on appeal is the application of CERCLA, and we are of opinion that CERCLA was correctly applied in the first instance but not in setting aside the verdict, and no issue being made of damages, we have required that judgment be entered on the jury verdict which is supported by the CERCLA cause of action.

is not a prerequisite to private recovery for cleanup costs under 42 U.S.C. §§ 9607(a)(2), (3), and (4)(B) of CERCLA.[4] Our decision is consistent with *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) which provides that an agency's interpretation of its own regulations is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation," 380 U.S. at 16–17, 85 S.Ct. at 801–802, a condition not present here.

▮ Airport next argues that the district court erred in holding that the contractual relationship between Airport and Carolina Chemicals for the disposal of the containers prevented an action under CERCLA.[5] We agree. The very terms of CERCLA expressly make "any person who *by contract, agreement,* or otherwise arranged for disposal ... of hazardous substances" liable for response costs "incurred by any other person consistent with the national contingency plan." (Italics added) 42 U.S.C. §§ 9607(a)(3) and (4)(B). We are of opinion that dumping under the contractual agreement which allowed Carolina Chemicals to dump its waste on Airport property for $25 a month was within the explicit terms of 42 U.S.C. §§ 9607(a)(3) and (4)(B) of CERCLA and was not excused thereby as the decision appealed from holds.[6] Accordingly, the judgment of the district court is vacated and the case is remanded for reinstatement of the jury verdict and entry of judgment thereupon.

VACATED AND REMANDED WITH INSTRUCTIONS.

4. Because we decide that there is no requirement of governmental approval of a cleanup plan, we need not address the Airport District's further argument that the district court improperly found that the Department had not approved the cleanup of the airport property.

5. Carolina Chemical argues that the district court's ruling on the contract was its way of saying that an equitable allocation of cleanup costs under § 9613(f)(1) would be for Airport to bear the full costs because of the contract. We do not read the district court's opinion in that way. The district court said that Airport's "right to maintain this action" was "adversely affected" by the contract, not that Airport's recovery was prevented because an equitable allocation of costs under § 9613(f)(1) would be for Airport to bear them all. Additionally, it appears to us that any argument that there be an equitable allocation of response costs between the parties

under § 9613(f)(1) apparently was first raised on appeal. While § 9613(f)(1) was mentioned in the opinion of the district court, it was not relied upon, and we especially note that nothing of this theory was mentioned in the jury charge. Neither was the theory or statute mentioned in the motion to set aside the verdict.

6. Apparently the district court considered that the factual part of the decision of the South Carolina court in *Carolina Chemicals, Inc. v. South Carolina Department of Health and Environmental Control,* 290 S.C. 498, 351 S.E.2d 575 (App.1986) to the effect that Carolina Chemicals plainly intended to abandon any further interest in or control over the containers was enough to absolve it. We simply do not agree. As set forth in the text of this opinion, the acts of Carolina Chemicals were within the explicit terms of CERCLA. A contractual disposition of waste contrary to CERCLA is of no effect.