**UNITED STATES of America, Plaintiff,**

v.

**J.M. TAYLOR, et al.,**

No. 3:89CV00231.

United States District Court,
M.D. North Carolina,
Rockingham Division.

Nov. 28, 1995.

Lawrence W. Puckett, Environmental Enforcement Section, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, Charles V. Mikalian, United States Environmental Protection Agency, Region IV, Atlanta, GA, for plaintiff.

Richard E. Fay, Petree Stockton, L.L.P., Charlotte, NC, for Shell Oil Company and Liaison Counsel for Group I Defendants (E.I. DuPont de Nemours & Company, Inc., Olin Corporation, UCI Holdings, Inc., Hercules Incorporated, The Boots Company (USA) Inc., NOR–AM Chemical Company, Shell Oil Company, Mobil Oil Corporation and Third-Party Defendant American Cyanamid Company).

Thomas McKee Dee, Jerry Kevin Ronecker, Husch & Eppenberger, St. Louis, MO, for Olin Corporation.

R. Howard Grubbs, Jeffrey L. Furr, Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC, for Ciba–Geigy Corporation and Liaison Counsel for Group II Defendants (J.M. Taylor, George D. Anderson, Grower Service Corporation, Farm Chemicals, Inc., Ciba Geigy Corporation, and Union Carbide Corporation).

David E. Nash, Thompson, Hine & Flory, Cleveland, OH, for Mobil Oil Corporation.

Michael B. Victorson, Robert E. Lannan, Robinson & McElwee, Charleston, WV, for Kaiser Aluminum & Chemical Corporation.

John A. Andreason, McGrath North Mullin & Kratz, P.C., Omaha, NE, for Grower Service Corporation.

L. Neal Ellis, Jr., Christopher G. Browning, Jr., Matthew P. McGuire, Hunton & Williams, Raleigh, NC, for Union Carbide Corporation.

George E. McGrann, Peter T. Stinson, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, James W. Miles, Jr., Greensboro, NC (Anne M. Foulkes, PPG Industries, Inc., of counsel), for Third–Party Defendant, PPG Industries, Inc.

## ORDER

ELIASON, United States Magistrate Judge.

This matter comes before the Court on defendant PPG Industries, Inc.'s ("PPG") Consolidated Motion to Strike Declaration of Intent and Third–Party Complaint and for More Definite Statement. Because the events leading up to this motion are somewhat unusual, it will be helpful to give a few details about this case prior to entertaining the motion.

In this litigation, the plaintiff United States is attempting to establish liability and recover its costs as a result of its environmental cleanup of a Super Fund site known as the "Aberdeen Pesticide Site." The United States seeks to recover cleanup costs under Sections 104 and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9604 and 9607(a), as amended. The site includes five areas and the contaminate primarily involves pesticides.

This case has been pending since 1989, during which time the United States has added a number of defendants that it suspects were involved in the formulation, production, transportation, disposal, etc., of the pesticides. Defendant PPG was added as a defendant several years after the case was filed. Later, several defendants filed third-party complaints against a number of other companies as well as persons who had some ownership interest in the land.

In 1992, because of the growth of the number of parties, the Court entered a Case Management and Scheduling Order ("CMSO"). This order set up a sequential discovery schedule, document depository sites, and liaison counsel to help coordinate discovery. In order to curb an alarmingly thick and growing file, the Court ordered, upon the parties' agreement, that "all defendants shall be deemed to have asserted cross-claims against all other defendants in this action, asserting rights to contribution and indemnity under common law and Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), and any other bases, without the necessity of having asserted these cross-claims by pleading." (CMSO, pp. 11–12) The Order also provided that such claims were deemed denied.

At the end of 1993, having found insufficient evidence to pursue its action against defendant PPG, the United States moved to dismiss those claims. No objections were filed. However, when PPG prepared the order for the Court's signature, it changed the language slightly so instead of merely dismissing plaintiff's claims against it, PPG was dismissed as a defendant from the lawsuit. Other co-defendants objected and pointed out that by virtue of the CMSO there were pending cross-claims by them against PPG. This prevented a dismissal without their consent. See Fed.R.Civ.P. 41(a)(1) & (c). As a consequence, the Court amended the order of dismissal to state that only plaintiff's claims against defendant PPG were being dismissed.

Cognizant that the plaintiff had found its case against defendant PPG too slim to pursue, the Court determined that PPG should not remain as a party unless the other defendants had sufficient evidence to pursue the matter against PPG and intended to do so. However, the Court was faced with several problems. First, because of the CMSO, the defendants had never actually filed cross-claims against defendant PPG. On the other hand, PPG was no longer a defendant as a result of the plaintiff dismissing its claims against PPG.

In order to resolve the confusion, the Court directed those parties interested in pursuing a claim against PPG to file a more definite statement of their claims against PPG. (See April 18, 1995 Order) Said statement was to be in the form of a third-party complaint. Several defendants [1] then filed a

---

1. Defendants Shell Oil Company, Olin Corporation, Ciba–Geigy Corporation, Mobil Oil Corpo-

pleading[2] which appeared to expand the claims against PPG from those pursued by plaintiff and in the court-ordered cross-claims. First, the defendants allege additional contaminants are involved in this litigation, and second, they assert liability under Section 107(a) of CERCLA. This expansion prompted the motion by PPG to strike these claims against it or in the alternative, that the Court order·these defendants to make an even more definite statement concerning the alleged evidence of PPG's liability. In the meantime, the first phase of liability discovery, which involves plaintiff's claims, is soon coming to a close.

### Motion to Strike under Rule 12(e) or 12(f)

PPG requests that defendants' complaint or at least certain portions of it be stricken under Fed.R.Civ.P. 12(f). PPG lists the following grounds in support of the motion for striking the "new" claims: (1) infusion of new allegations at this stage of the proceedings prejudices PPG and the allegations are not authorized by this Court's order; (2) claims under CERCLA Section 107 are improper; and (3) attorneys' fees are not permitted by law.

Rule 12(f) provides that a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). The allegations in defendants' complaint do not on their face fit within any of those categories. Defendants have merely stated a garden variety claim under CERCLA. Thus, it would seem that PPG is really attempting to assert a motion to dismiss defendants' complaint for failure to state a claim upon which relief can be granted, as well as on procedural grounds.

 Motions to dismiss, which are veiled in the form of a motion to strike, are viewed with disfavor and are not a "proper way to procure the dismissal of all or a part of a complaint." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 644 (1990). On the other

hand, the technical name given to a pleading is inconsequential, and an improperly designated Rule 12(f) motion may be treated as a motion to dismiss by the court. *Id.* at 644–46, 657. Some parts of defendants' complaint are subject to dismissal on this basis.

The procedural objections in PPG's Rule 12(f) motion are more properly considered under Fed.R.Civ.P. 12(e). That rule provides that when a party fails to comply with an order to make a more definite statement, the court may "strike the pleading to which the motion was directed or make such order as it deems just." Fed.R.Civ.P. 12(e). As Wright and Miller note, "[t]he language 'such order as it deems just' in the test of Rule 12(e) permits a variety of sanctions that stand midway between the harsh course of dismissal and the relatively benign punishment of repeating the order for a more definite statement." Wright & Miller, *supra,* § 1379, at 642. With these standards in mind, the Court will determine whether the new claims should be stricken or the defendants should be required to make a more definite statement.

### 1. New allegations—Non–Compliance with Court Orders and Prejudice

PPG argues that those portions of defendants' complaint which charge Columbia Southern, PPG's predecessor-in-interest, with being involved (along with the Taylor Chemical Company) in the manufacture, formulation and packaging of more than cotton dust pesticides violate the Court's April 18, 1995 Order. They allegedly broaden the claim against PPG without setting out the factual bases for the claims. If so, they may be stricken pursuant to Rule 12(e).

The April 18, 1995 Order became necessary because the United States dismissed its claims against PPG, which then remained a party only by virtue of other defendants' cross-claims against it. Furthermore, because the defendants had only asserted

---

ration, Kaiser Aluminum & Chemical Corporation, Grower Service Corporation and Union Carbide Corporation ("Defendants"), submitted a Declaration of Intent and Third–Party Complaint (Pleading no. 652). Hereafter, in this Opinion,

when the Court refers to defendants, it means these defendants.

**2.** The Court will hereafter refer to this pleading as "defendants' complaint."

cross-claims against PPG via the CMSO, the factual bases for the cross-claims were never specified. In issuing the April 18, 1995 Order, the Court assumed that the only claims any defendant had against the other defendants were with respect to the pesticides identified by the United States. On reflection, that assumption may not be correct. Nothing in the CMSO or the April 18, 1995 Order expressly forbids allegations concerning other or new contaminants. Thus, it cannot be said that the new factual allegations exceed the bounds of the order.

Next, PPG claims that permitting the new allegations at this late date will prejudice them. PPG asserts it would now have to expand the scope of discovery. The United States' complaint against PPG was limited to cotton dust pesticides and PPG contends that discovery focused on such pesticides. However, as defendants note, they too must conduct discovery under the same conditions.

■ This part of the dispute is best resolved by employing the principles contained in Fed.R.Civ.P. 15(a). Delay alone is usually an insufficient reason to deny a motion to amend a complaint unless the delay is accompanied by prejudice, bad faith, or futility. *Johnson v. Oroweat Foods Co.,* 785 F.2d 503 (4th Cir.1986). It is difficult to sustain a claim of prejudice when trial is not imminent and discovery has not ended. *Id.; Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274 (4th Cir.1987). That is the situation before the Court. The CMSO provides that discovery as to the cross-claims and third-party complaints will not end until after the trial of plaintiff's claims. Thus, there is ample time for the parties to conduct discovery.

PPG alleges, in addition, that certain key witnesses are elderly or deceased. To the extent there is a danger of losing testimony, the consequences will fall heavier on the defendants, who have the burden of proof on their claims, as opposed to PPG. Also, the Court can and will make exceptions to the discovery schedule upon good cause shown. Therefore, the Court cannot find a basis for striking the allegations concerning new contaminants based on delay or prejudice.

The Court does, however, agree with PPG that it is due a more definite statement under Rule 12(e). Motions for a more definite statement may be granted where a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). In this case, the true gravamen of PPG's motion is that defendants' complaint does not comply with this Court's April 18, 1995 Order. The Court agrees and will grant PPG's motion for a more definite statement on that ground.

■ Defendants were required to set out "the factual and legal bases for the claims as one would in a complaint or third-party complaint." (Recommendation No. 4 at 6) Defendants argue that they satisfied this requirement because their pleading satisfies the notice pleading requirement of the Federal Rules of Civil Procedure. The Court disagrees and finds the April 18, 1995 Order clearly asked for more than notice pleading.

That Order was entered because the Court was concerned that plaintiff United States' dismissal of claims against PPG was "some indication that the United States feels that there are no viable claims against PPG." (Recommendation No. 4 at 5) It wanted to be sure that there were facts to support defendants' assertions. Notice pleading does not accomplish this. Moreover, defendants have broadened the claims against PPG to include additional but unspecified commercial pesticides, hazardous substances, commercial relationships, and industry practices.

Defendants' complaint fails to comply with this Court's order that the defendants file a more definite statement. The Court wants the factual bases for the claims set out in detail, which includes the sources of evidence which underlie the allegations, and specific identification of the contaminants, relationships and practices. In accordance with Rule 12(e), defendants are ordered to identify the contaminants and specify the evidence supporting the claims as to cotton dust and the additional pesticides, hazardous substances, commercial relationships, and industry practices which purportedly form the basis for PPG's liability.

### 2. Addition of the CERCLA Section 107 Claim

#### (a) Compliance with CMSO

The addition of defendants' claim under CERCLA Section 107 stands on different

footing from the new factual allegations. Because the CMSO did not set out the factual basis of the cross-claims, the Court has required defendants to supply the same. On the other hand, the CMSO did set out the legal basis for the claims. Paragraph IV of the CMSO states that:

all defendants shall be deemed to have asserted cross-claims against all other defendants in this action, asserting rights to contribution and indemnity under common law and Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), and any other bases, without the necessity of having asserted these cross-claims by pleading.

(CMSO, ¶ IV). There is no mention of claims arising under Section 107.

■ The CMSO was entered only after suggestions from, and review by, all parties involved. At no point did defendants suggest that the cross-claims deemed asserted under the CMSO included claims under Section 107. Inasmuch as defendants' complaint was to be a more definite statement of cross-claims asserted by the CMSO, the new Section 107 claim exceeds the bounds of the April 18, 1995 Order. The defendants did not seek permission from the Court to add a new legal theory. This claim may be stricken on that basis, pursuant to Rule 12(e).

*(b) Legal Validity of Defendants' CERCLA Section 107 Claims*

The Court will also grant PPG's motion to strike the Section 107 claims pursuant to Rule 12(f). However, the Court declines to do so on the asserted grounds that the claims are not authorized by law. Rather, the Court finds the defendants fail to state a claim for relief.

Paragraph 26 of the defendants' complaint alleges:

Upon information and belief, if the theories of liability alleged by the plaintiff against Defendants are found by this Court to be valid, PPG ... arranged for disposal or treatment, or arranged with a transporter for disposal or treatment, of hazardous substances owned or possessed by Columbia Southern at the three above-referenced areas within the meaning of CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3). *Therefore, PPG is jointly and severally liable under CERCLA § 107(a)(3) ... for plaintiff's alleged response costs incurred in connection with the ... Areas and in connection with indivisible injury at the Site.*

(Pleading no. 652, at 9, ¶ 26) (emphasis added). PPG moves to strike the underlined portion of this paragraph on the grounds that emerging case law limits defendants to using CERCLA Section 113(f) for asserting claims for contribution. Defendants argue that they are entitled to pursue both a direct claim against PPG under Section 107(a)(4)(B) and a contribution claim under Section 113.[3]

■ The distinction between proceeding under one section of CERCLA or the other is important because where the environmental harm is indivisible, liability under Section 107 is joint and several, whereas liability under Section 113 is merely several. *U.S. v. Monsanto Co.*, 858 F.2d 160, 171–72 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *see Kaufman and Broad–South Bay v. Unisys. Corp.*, 868 F.Supp. 1212, 1214 (N.D.Cal.1994); *United States v. Kramer*, 757 F.Supp. 397,

---

**3.** In support of their argument that they are entitled to pursue a Section 107 claim against PPG, defendants cite *Nurad, Inc. v. William E. Hooper & Sons, Co.*, 966 F.2d 837 (4th Cir.), *cert. denied*, 506 U.S. 940, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992); *Richland–Lexington Airport District v. Atlas Properties, Inc.*, 901 F.2d 1206 (4th Cir. 1990); *City of North Miami v. Berger*, 828 F.Supp. 401 (E.D.Va.1993); *Chesapeake and Potomac Tel. Co. v. Peck Iron & Metal Co.*, 814 F.Supp. 1269 (E.D.Va.1992); *FMC Corp. v. United States Dept. of Commerce*, 786 F.Supp. 471 (E.D.Pa.1992), *aff'd*, 29 F.3d 833 (3d Cir.1994); *United States v. Jagiella*, 1991 WL 78171 1991 U.S.Dist. LEXIS 6037 (N.D.Ill.1991); *United*

*States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991); *Sand Springs Home v. Interplastic Corp.*, 670 F.Supp. 913 (N.D.Okl.1987). Other cases where Potentially Responsible Parties ("PRP's") were allowed to pursue cost recovery actions under Section 107 include *Town of Wallkill v. Tesa Tape Inc.*, 891 F.Supp. 955 (S.D.N.Y.1995); *Bethlehem Iron Works, Inc. v. Lewis Industries, Inc.*, 891 F.Supp. 221 (E.D.Pa.1995); *Companies for Fair Allocation v. Axil Corp.*, 853 F.Supp. 575 (D.Conn.1994); *United States v. SCA Services of Indiana, Inc.*, 865 F.Supp. 533 (N.D.Ind.1994); *Kelley v. Thomas Solvent Co.*, 790 F.Supp. 710 (W.D.Mich.1990).

414 (D.N.J.1991). If PPG were found jointly and severally liable under Section 107, it would have the burden of establishing that the harm is divisible and that the damages are capable of apportionment or else be responsible for paying the full cost of the cleanup. *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 n. 4 (8th Cir.1995); *U.S. v. Colorado & Eastern R. Co.*, 50 F.3d 1530, 1535–36 (10th Cir.1995); *U.S. v. Alcan Aluminum Corp.*, 964 F.2d 252, 269 (3d.Cir.1992). Under Section 113, however, the burden is on defendants to prove PPG's share of the damages.[4] *Id.*

PPG argues that the other defendants cannot avail themselves of Section 107(a)(4)(B) because they are Potentially Responsible Parties ("PRP's") as opposed to innocent parties. It contends that under emerging case law,[5] PRP's[6] are limited to bringing contribution actions under Section 113. Courts adopting this view find that claims between PRP's are merely attempts to reapportion costs and, thus, are quintessential claims for contribution. *U.S. v. Colorado & Eastern R. Co.*, 50 F.3d at 1536; *United Technologies v. Browning–Ferris Industries,*

33 F.3d 96, 99 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989); and *T H Agriculture & Nutrition v. Aceto Chemical*, 884 F.Supp. 357, 361 (E.D.Cal.1995) (listing cases). The Fourth Circuit has not yet ruled on this issue.[7] Thus, this Court must predict which route it would take. This Court does not quarrel with the results of most of PPG's cited decisions, but addresses the problem from a slightly different approach.

The starting point is to examine the language of the relevant sections of the statute. *Heckler v. Turner*, 470 U.S. 184, 193, 105 S.Ct. 1138, 1143, 84 L.Ed.2d 138 (1985). A plain reading of Section 107 does not suggest that PRP's could never bring Section 107 actions. Actually, Section 107 does not explicitly state who may bring an action for recovery. Rather, this information is obtained by inferring that PRP's are liable to persons who incur certain costs. Section 107(a) lists four categories of persons who

4. Defendants recognized this in earlier pleadings to this Court where they stated, "[a] party bringing a Section 113 claim .has the additional burdens of finding all other potentially liable parties and proving the allocation of damages in regard to each defendant." (Pleading no. 549, Ex. A, at 3)

5. In support of its argument that defendants are limited to proceeding under Section 113, PPG cites *United States v. Colorado & Eastern R. Co.,* 50 F.3d 1530 (10th Cir.1995); *United Technologies v. Browning–Ferris Industries,* 33 F.3d 96 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761 (7th Cir. 1994); *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989); *T H Agriculture & Nutrition v. Aceto Chemical,* 884 F.Supp. 357 (E.D.Cal. 1995). More recently, two district courts in the Third Circuit and the United States District Court for the Northern District of Ohio have limited liable parties to Section 113. *New Castle County, Rhone–Poulenc, Inc. v. Halliburton NUS Corp.,* 903 F.Supp. 771 (D.Del.1995) (limiting plaintiff who incurred cleanup obligations by entering a consent agreement to settle a lawsuit brought by the EPA to section 113); *Gould Inc. v. A & M Battery and Tire Service, et al.,* 901 F.Supp. 906 (M.D.Pa.1995) (limiting plaintiff who entered consent agreement and 106 order with EPA to section 113); *Plaskon Electronic*

*Materials, Inc. v. Allied–Signal, Inc.,* 904 F.Supp. 644 (N.D.Ohio 1995).

6. In actuality, if it admitted liability or were found liable, a PRP would be a RP, *i.e.* a responsible party. A PRP is a party which might be liable. This distinction is important. As will be seen, the cases relied on by PPG make the assumption that a party which actually cleans up a site necessarily has admitted, or has been or will be found liable. However, it is not always clear in those decisions that liability has been established. While there are obvious problems with that assumption, in this opinion, PRP shall also be used to denote responsible parties.

7. While not directly addressing the issue, the Fourth Circuit has allowed PRP's to bring direct cost recovery actions under Section 107. *Nurad,* 966 F.2d at 841; *Richland,* 901 F.2d 1206. In both cases, the cost recovery actions were brought by the current property owners, PRP's under Section 107(a)(1). Neither case specifically mentions whether these property owners were innocent. However, in *Richland,* the property owner had a contractual relationship with the party who actually disposed of the hazardous wastes on its property. *Id.* at 1207. Thus, the property owner would appear to be precluded from raising one of the limited Section 107(b) defenses to Section 107(a) liability. 42 U.S.C. § 9607(b)(3).

may be liable, *i.e.* PRP's. It then states that such persons:

shall be liable for—

(A) all costs of removal or remedial action *incurred by the United States Government or a State or an Indian tribe* not inconsistent with the national contingency plan;

(B) any other necessary costs of response *incurred by any other person* consistent with the national contingency plan; . . . . (emphasis added)

42 U.S.C. § 9607(a)(4).

It is clear that Section 107(a)(4)(B) provides that persons, other than federal or state governments or Indian tribes covered in Section 107(a)(4)(A), may recover costs of response. Under Section 101, the term "person" includes private parties.[8] Indeed, the Supreme Court in *Key Tronic Corp. v. United States*, — U.S. —, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), after reviewing the legislative history and lower court decisions, found it implicit that Section 107 "unquestionably provides a cause of action for private parties to seek recovery of cleanup costs. . . ." 114 S.Ct. at 1966.

**8.** Section 101(21) defines "person" as an "individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21). Thus, the United States is also a person. Yet it has a special status as well.

Section 107(a)(4)(A) singles out the United States Government, States, and Indian tribes, and permits these governmental entities to recover costs of removal or remedial actions incurred without having the burden of proving such costs are consistent with the national contingency plan ("NCP"). *See* 42 U.S.C. § 9607(a)(4)(A) (responsible parties liable for costs incurred by these governmental entities "not inconsistent with" the NCP). All other persons, however, must prove the costs they seek to recover are consistent with the NCP. *See* 42 U.S.C. § 9607(a)(4)(B) (responsible parties liable for costs incurred by any other person "consistent with" the NCP). *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 747 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Thus, private parties do not stand in the same position as the government when bringing cost recovery actions under Section 107(a)(4). *See e.g., Rhodes v. County of*

In a case presaging *Key Tronic Corp.*, the Fourth Circuit recognized that CERCLA encourages private parties to clean up environmental hazards by providing them a cause of action for recovery of costs. *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 841 (4th Cir.); *cert. denied*, 506 U.S. 940, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992). In its view, a private party may hold a responsible person strictly liable under Section 107(a)(4)(B) for the costs it incurred in responding to the release of the hazardous substance. *Id.* It further noted that courts also have authority to allocate response costs among all responsible parties using equitable factors contained in Section 113(f)(1).[9] *Id.* Thus, if a PRP should bring a Section 107 action and prevail, the other PRP's can assert contribution claims against the plaintiff. If found to be liable, then the court would use the equitable factors of Section 113 allocation as to all parties. *See e.g., Control Data Corp*, 53 F.3d at 935 (listing factors).

Taking into account the above considerations, the Court determines that the test as to whether a private party may utilize Section 107 does not rest on whether that

*Darlington, S.C.*, 833 F.Supp. 1163, 1194 (D.S.C. 1992) (citing cases). In contrast, Section 113 makes no mention of proving or disproving consistency with the NCP. Presumably this is so because the costs and their inconsistency or consistency with the NCP have already been determined in a prior proceeding in which a judgment issued or settlement was approved. 42 U.S.C. § 9613(g)(3).

**9.** (f) Contribution

(1) Contribution
Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

party is liable, or potentially liable.[10] Rather, it depends on whether such party has incurred "necessary costs of response." 42 U.S.C. § 9607(a)(4)(B). Such costs are one of the elements which courts have set out as a prerequisite for recovery pursuant to Section 107. A plaintiff must prove:

(i) that the site is a "facility" as defined in 42 U.S.C. § 9601(9);

(ii) that a release or threatened release of a hazardous substance has occurred on the site;

(iii) *that the release or threatened release has caused plaintiff to incur response costs;* and

(iv) that each defendant falls within one of the categories of "liable parties" set forth in § 9607(a).

*City of North Miami v. Berger,* 828 F.Supp. 401, 407 (E.D.Va.1993) (citing *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152–3 (9th Cir.1989); *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d at 668; *Chesapeake and Potomac Tel. Co. v. Peck Iron & Metal Co.,* 814 F.Supp. 1269, 1274 (E.D.Va.1992)) (emphasis added). *See also White v. County of Newberry, S.C.,* 985 F.2d 168, 172 (4th Cir. 1993) (noting additionally that such costs must be consistent with the national contingency plan).

■ A party may incur response costs by voluntarily initiating a clean up, by implementing response or remedial activity under an administrative order of the EPA or a comparable State agency, by consent decree, etc. A party may incur such costs without admitting liability. However, a party does not incur response costs *merely* by being adjudged liable, or by being a defendant in a cost recovery action. Rather, a party must, in some degree, actually conduct the cleanup. *See e.g. Bethlehem Iron Works, Inc. v. Lewis Industries, Inc.,* 891 F.Supp. 221 (E.D.Pa. 1995) (voluntary cleanup); and *Chesapeake,*

814 F.Supp. 1269 (Section 106 order cleanup); and other cases cited in n. 3, *infra.*

The approach adopted by the courts upon which PPG relies is not as convincing. The argument put forth attempts to interpret Section 107 by looking to the scope of Section 113. The rationale assumes that because Congress provided PRP's with a contribution remedy, it necessarily foreclosed their utilization of Section 107 when they incurred response costs by conducting a clean up. *U.S. v. Colorado & Eastern R. Co.,* 50 F.3d at 1535–36; and *United Technologies,* 33 F.3d at 99–100. Those courts point out that contribution claims normally involve one party recovering from someone who is also liable. They show through legislative history that Congress enacted present Section 113 to clarify and confirm the fact that the person held jointly liable under CERCLA can seek contribution from other potentially liable parties. From this, they conclude that Congress must have intended that only innocent parties or non-PRP's may use Section 107 and that PRP's are relegated to using Section 113. *Id.*

This approach has several problems. First, it ignores the plain language of the statute. Second, this construction requires that the courts engraft the word "innocent" into Section 107(a)(4)(B), so as to permit other "innocent" parties to recoup their recovery costs. *United Technologies,* 33 F.3d at 99. However, this would require a party to prove its innocence before utilizing Section 107, an extraordinary burden to place on a plaintiff. The implicit assumption which is operating is that "innocent" parties do not unilaterally engage in cleanup or even engage in a settlement with the government without admitting Section 107 liability.[11] The introduction of the element of innocence adds needless confusion to the determination of who may utilize Section 107. It involves the Court in predicting, prior to a trial,

---

42 U.S.C. § 9613.

**10.** In some instances, the government may be a PRP. Thus, if PPG's argument were accepted, the government would be prohibited from bringing a Section 107 action. This would cripple environmental cleanups. Consequently, it has been held that such a status does not bar the

government from pursuing Section 107. *United States v. Kramer,* 757 F.Supp. 397.

**11.** This presumption of guilt has been employed even when a party is forced to comply with a unilateral administrative order issued for an emergency cleanup under Section 106. *Akzo Coatings,* 30 F.3d at 769.

whether a party may also share liability with defendants for the environmental cleanup.

The construction of Section 107 urged by PPG fails to give due deference to one of the major principles underlying it. Section 107 encourages the voluntary initiation of a clean up unilaterally or as part of a settlement with the government. A party who does incur recovery costs by directing the cleanup of a site performs a socially useful function and conserves precious governmental resources for other cleanup sites. Also, to the extent that this party takes a lead with respect to those cleanup costs, it may bring in a number of other PRP's to assist in the cleanup process. This also helps spread the costs to make more cleanups possible. *See Key Tronic Corp.*, 114 S.Ct. at 1964 n. 6.

Some courts have felt that allowing a PRP the benefits of the strict liability provisions of Section 107 provides a windfall to the plaintiff who has completed the environmental cleanup. *T H Agriculture*, 884 F.Supp. at 361 (citing cases). However, expending resources to clean up a site is not a windfall. And, a PRP who incurs recovery costs and utilizes Section 107 may well be faced with Section 113 contribution actions from the defendants. The courts have ample discretion to allocate costs among liable parties using the equitable factors permitted by Section 113(f)(1).

Another voiced concern has been that permitting PRP's to use Section 107 will result in a duplication of actions. *T H Agriculture*, 884 F.Supp. at 361–62 (citing cases). However, whether a party uses Section 113 or 107, it still must show the other defendants are liable under Section 107. Thus, to the extent other defendants are or are not bound by principles of estoppel as a result of an initial liability determination trial by the United States, the application of these principles will not be altered merely because some PRP's also have a direct action for their incurred recovery costs.

Some courts have also expressed fear that PRP's who unilaterally initiate cleanups will run to the courthouse to sue their confederates. *Id.* The short answer to that concern is that cleanups should be encouraged. Such a party not only cleans up an environmental hazard site but collects together the parties responsible for the environmental damage. Second, it is not likely that any defendant could run out and enter onto someone's land to begin an environmental cleanup. Usually, it will be the landowner who initiates unilateral private cleanups. *See, supra*, n. 6.

To the extent that a private party is compelled to clean up under a Section 106 order issued by the government, the private party should also be able to bring a Section 107 action for response costs which it incurred. Such a party may not be an "innocent or noble volunteer." *Chesapeake and Potomac Tel. Co.*, 814 F.Supp. at 1272. However, without an adjudication of guilt, a party under a Section 106 order must comply with the administrative order or face fines of up to $25,000 per day. *Id.* It is difficult to understand why being the target or victim of such a draconian order should disqualify one from seeking out others who are also liable. *Id.; contra Akzo Coatings*, 30 F.3d 761. Such parties play a vital role in achieving the important goals of CERCLA.

Even if PRP's which incur response costs do file complaints, the Court retains ample authority to permit the United States to first proceed with its case. It can stay cases or bifurcate proceedings. For example, the Court understands there have been Section 106 orders issued in this case. The Court presently intends to stay those proceedings. However, should it appear that the United States will not be pressing claims as to a cleanup conducted as a result of a Section 106 order, the Court may, in the interest of efficiency, decide to let that claim be tried along with the claims of the United States.[12]

---

**12.** It should be pointed out that difficulties can arise any time a court bifurcates an action. Relegating all PRP's to contribution actions can itself create problems. Thus, in the instant case, it has been pointed out that when the United States tries its Section 107 action, defendants will be challenging the credibility of a certain witness who gives testimony establishing their liability. However, when it is time for them to establish their contribution claim against PPG, they will need to tout the witness' credibility because he will show PPG is also liable under Section 107. With this same concern in mind, one might argue that allowing PRP's to bring a

Some courts have also considered the effect of the different statutes of limitations for Section 107 actions and Section 113 actions as grounds for holding that PRP's may not bring Section 107 actions. *United Technologies*, 33 F.3d at 101. The limitations period for both Sections 107 and 113 actions are contained in Section 113(g). 42 U.S.C. § 9613(g). In general, Section 113(g)(2) requires that a Section 107 action be initiated within six years of the initiation of a response or remedial action. On the other hand, Section 113(g)(3) provides for a shorter, three-year period. It requires that,

> [n]o action for contribution for any response costs or damages may be commenced more than 3 years after—
>
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>
> (B) the date of an administrative order under Section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3).

It has been argued that if a PRP could use Section 107, it would have an extra three years within which to seek recovery and, thus, render the three-year period applicable to contribution recovery meaningless. *United Technologies*, 33 F.3d at 101. This would not appear to be the case.

In fact, the differing statutes of limitations in Section 113(g) support the view that PRP's who clean up and actually incur response costs should be able to use Section 107 and the corresponding longer limitation period of Section 113(g)(2). The PRP who initiates and conducts a cleanup is taking the kind of action spoken about in Section 113(g)(2), *i.e.* initiating remedial action.

On the other hand, the statute of limitations for a contribution action does not speak to the initiation of a cleanup or recovery of response costs. Rather, it speaks in terms of liability imposed by those who have paid or have incurred a fixed liability as opposed to some open-ended cleanup operation. The language of Section 113(g)(3) clearly contemplates that a party bringing a contribution action will have been subjected to a *judgment* or a court *approved settlement*. Admittedly, this does not rule out the imposition of injunctive relief which could include a cleanup. However, a PRP which conducts an environmental cleanup will not necessarily have suffered a judgment or court approved settlement and, thus, cannot bring a contribution action—and this includes one subjected to a Section 106 administrative order. A party which completes a removal or remedial action as referenced in Section 113(g)(2) arguably needs the extra time of the six-year period because it is busy doing the cleanup. On the other hand, a party which has incurred fixed liability would arguably need only the shorter three-year period from the time such liability was imposed.

One court has defined necessary costs of recovery in Section 107(a)(4)(B) to include reimbursements to the government or another party. Consequently, to prevent every PRP from using Section 107 and rendering Section 113 meaningless, it restricts usage of Section 107 to innocent parties. *United Technologies*, 33 F.3d at 101–102. It would seem, however, that when a PRP does not conduct its own cleanup, it has not incurred recovery costs. Rather, its liability is similar to that of a tort feasor's liability for the doctor's bills of the injured party. Payment by the tort feasor does not mean it has incurred doctor's bills itself.

Another concern has been that permitting PRP's to utilize Section 107 will unduly constrain the government's ability to obtain settlements. Because CERCLA's settlement framework depends in part upon contribution protection, this argument assumes that allowing any parties to bring cost recovery actions against settling parties would "gut" a valuable mechanism for encouraging settlement. *United Technologies*, 33 F.3d at 103.

---

Section 107 action to recover incurred recovery costs against any defendant not included in the United States' case along with the United States'

claim should be permitted to proceed at the same time in order to prevent such anomalous predicaments.

The contribution protection comes from Section 113(f)(2) which states that a party to an administrative or judicially approved settlement shall not be liable "for claims of contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2); *see also* 42 U.S.C. § 9622(g)(5) (regarding *de minimis* settlements). This Court does not believe that permitting PRP's to use Section 107 will unduly or unfairly constrain the government's ability to obtain settlements.

First of all, the costs of a party which conducts a cleanup would not seem to be a matter properly included in the United States' settlement because the United States has not incurred such costs. Additionally, settling parties will still have contribution protection as an incentive to settle. They must simply take care to be aware of any independent clean up efforts. Furthermore, the end result of this argument would render all parties, liable or not, other than the United States, incapable of bringing cost recovery actions for fear such actions may curtail the government's settlement authority. If Congress had intended this result it likely would have expressly granted settling parties protection from cost recovery actions and not just contribution actions. And it would not have granted private parties the ability to bring cost recovery actions under Section 107(a)(4)(B). To achieve CERCLA's goals, the government does not rely on settlement alone. It relies as well on private parties who conduct clean up activities, either voluntarily or otherwise.

For the above reasons, this Court predicts that the Fourth Circuit would decline to follow those cases which hold that a PRP may never utilize Section 107, but instead would look to see if it incurred necessary costs of response. Notwithstanding employment of this construction of the statute, this Court determines the defendants in the instant case have not yet stated a claim for relief. The reason is that the defendants fail to allege they have incurred "necessary costs of response" as a result of their conducting a cleanup.

In all of the cases cited by defendants where PRP's were allowed to bring Section 107 claims, the PRP's had already incurred response costs. *Nurad, Inc., supra; Richland–Lexington Airport District v. Atlas Properties, Inc.,* 901 F.2d 1206 (4th Cir.1990); *Chesapeake and Potomac Tel. Co.,* 814 F.Supp. at 1272–73; *City of North Miami,* 828 F.Supp. at 406; *FMC Corp., supra; United States v. Jagiella,* 1991 WL 78171 1991 U.S.Dist. LEXIS 6037 (N.D.Ill.1991); *Kramer, supra; Sand Springs Home v. Interplastic Corp.,* 670 F.Supp. 913 (N.D.Okl. 1987).

■ As the court in *United States v. Kramer* stated, "[s]ection 107 permits the Government or a private party to go in, clean up the mess, pay the bill, then collect all its costs not inconsistent with the NCP from other responsible parties—even if plaintiff was also responsible for the contamination." *Kramer,* 757 F.Supp. at 417, *cited in City of North Miami, supra,* 828 F.Supp. at 407 n. 7. Defendants have not alleged that they incurred any response costs, either voluntarily, under consent decree, pursuant to an administrative order or in any other manner. It is this failure, and not their potential liability, that prohibits their Section 107 claim at this time.[13] Should the defendants wish to pursue this matter, they will be required to seek permission from the Court. *Supra,* p. 360.

### 3. Attorneys' Fees

■ PPG next asserts that those portions of defendants' prayer for relief which seek to

---

13. In *United States v. Kramer,* defendants objected to the government's Section 107 claim because the government itself was a liable party. The court noted that,

the Government stands in a much different posture as plaintiff in a section 107(a) action, than it would as a PRP defendant in the same action, because it is the Government and not the other PRPs that has incurred the response costs at the Site. Had any other PRP—and on this motion we consider the Government to be

a PRP—gone ahead and incurred response costs at the Site, then that PRP could have brought a section 107(a) recovery action, and this case would be in the same procedural posture, but with the Government as a defendant. But the brute fact is that the Government and not the named defendants has spent public monies on the cleanup, and is therefore entitled to full recovery of those monies, whatever its potential liability for contribution.

*United States v. Kramer,* 757 F.Supp. at 414.

recover attorneys' fees should be stricken. The Supreme Court in *Key Tronic*, —— U.S. ——, 114 S.Ct. 1960, established that while litigation-related attorneys' fees are not recoverable, fees relating to identifying other PRP's may be recoverable under Section 107. Costs which primarily protect a PRP's interest as a defendant, such as negotiations and studies resulting in a consent decree are not "necessary costs of response." *Id.* —— U.S. at ——, 114 S.Ct. at 1968. Defendants' complaint failed to specify any "recoverable" attorneys' fees. And, it is doubtful they could when they have failed to allege a cause of action under Section 107, but are only proceeding under Section 113. In any event, as the pleadings stand, defendants' attorneys' fees allegations are insufficient and shall be stricken.

**IT IS THEREFORE ORDERED** that PPG's motion to strike the last sentence of ¶ 26, claiming PPG is jointly and severally liable under CERCLA Section 107 be, and the same hereby is, granted.

**IT IS FURTHER ORDERED** that PPG's motion to strike portions of ¶¶ 11 and 12 and the reference to attorneys' fees in defendants' prayer for relief be, and the same hereby is, granted.

**IT IS FURTHER ORDERED** that PPG's motion for a more definite statement be, and the same hereby is, granted and defendants shall file such statement forthwith.