UNITED STATES of America, Plaintiff,

v.

GORDON STAFFORD, INC., Harry Gordon Stafford, Marion Engineering Company, Inc., and Gary L. Powell, Defendants.

Civil Action No. 1:90cv102.

United States District Court,
N.D. West Virginia.

Feb. 3, 1997.

Patrick Flatley, Molly Hall, Wheeling, WV, for plaintiff.

James West, Jr., W. Henry Lawrence, Clarksburg, for defendants.

## ORDER

MAXWELL, District Judge.

The series of events which brings the Court to the legal issues now under consideration began in June 1983, when the Atlantic Richfield Company (ARCO) began phasing out its mining operations at the Jackpile Mine in New Mexico. As part of the phase-

out, ARCO held a public auction to sell surplus equipment. At the auction, defendant Gordon Stafford, acting on behalf of defendant Gordon Stafford, Inc., purchased eleven electrical transformers for $1,500.00. After shipping the transformers to West Virginia, Stafford advertised them for sale. In 1987, Stafford sold the transformers to defendant Powell, acting on behalf of defendant Marion Engineering Company.

Defendant Powell subsequently had the transformers tested and discovered that the oil in one transformer contained in excess of 500 parts per million polychlorinated biphenyls (PCBs) and six of the transformers were PCB–Contaminated transformers, containing 50–500 parts per million PCBs. After discussions between Powell and Stafford, an individual named James Badgett hauled the seven transformers, along with two 55–gallon drums of hazardous substances, from Powell's facility and ultimately disposed of them on private property in Harrison County, West Virginia.

In May 1987, the site was discovered by the West Virginia Department of Natural Resources. Response action was undertaken by the United States.

In an effort to obtain reimbursement of its response costs, the United States filed the instant Complaint on September 26, 1990, pursuant to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675. The Complaint alleges, among other things, that the defendants are liable under section 107(a)(3) of CERCLA as persons "who arranged for disposal" of hazardous waste.

By Order entered January 14, 1993, the Court entered summary judgment in favor of defendant ARCO, concluding that the record did not establish that the sale of the transformers by ARCO constituted an arrangement for disposal. Pursuant to Rule 54(b), Federal Rules of Civil Procedure, final judgment was entered for ARCO on March 19, 1993.

The remaining parties proceeded with discovery, and, on February 25, 1994, the United States filed a Motion for Summary Judgment as to the liability of defendants Gary Powell and Marion Engineering Company. The United States also filed a separate Motion for Summary Judgment on its Response Costs.

Before the defendants had an opportunity to respond to the motions, the United States sought and received a stay of further proceedings in this matter. By Order entered June 16, 1994, the above-styled civil action was stayed indefinitely and placed on the inactive docket of the Court, pursuant to a motion filed June 13, 1994, by the United States.[1] The stay has now been lifted by the Court, and the Motion for Summary Judgment with regard to liability has been fully briefed.[2] On January 31, 1997, the parties appeared for oral argument on the pending motion.

In support of its Motion for Summary Judgment as to liability, the United States contends that defendant Powell is personally liable under Section 107(a)(3) of CERCLA based on his personal involvement in the arrangement to dispose of the transformers and related wastes and that defendant Marion Engineering is also liable by virtue of the actions of its president and main shareholder, defendant Powell.[3] The United States has submitted a Statement of Undisputed Material Facts in support of its motion. It is represented that the facts are taken from defendant Powell's sworn testimony at his

---

1. The United States sought the stay pending an investigation of possible billing irregularities by the remediation contractor at another Superfund site in West Virginia.

2. The parties have requested that the Court defer consideration of the United States' Motion for Summary Judgment on its Response Costs.

3. Section 107(a)(3) imposes strict liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3); *Nurad v. Hooper & Sons Co.*, 966 F.2d 837, 841 (4th Cir.1992); *United States v. Monsanto Co.*, 858 F.2d 160, 167 (4th Cir.1988).

criminal trial and from the deposition he gave on July 27, 1993.[4]

Defendants Powell and Marion Engineering have objected to the accuracy of the facts as reported—they insist that the United States' Statement of Facts paraphrases and summarizes defendant Powell's prior testimony in such a way as to make it misleading. The defendants urge that material facts are in dispute, thereby, precluding summary judgment. In the alternative, the defendants argue that the Uniform Commercial Code gave Powell the absolute right to reject and return the transformers without incurring liability.

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir.1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, and which are genuine, meaning that they create fair doubt rather than encourage mere spec-

ulation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

Although certain facts are in dispute in this matter, the facts which are not in dispute establish that defendants Powell and Marion Engineering "arranged for disposal" of hazardous substances, as that phrase has been construed by the courts. As a matter of law, therefore, the defendants are liable for response costs under CERCLA.

■ Courts are required to engage in a liberal judicial interpretation of the terms within CERCLA in order to achieve CERCLA's "overwhelmingly remedial" statutory scheme. *Florida Power & Light Company v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990). CERCLA defines the term "disposal" using the definition contained in the Solid Waste Disposal Act. 42 U.S.C. § 9601(29); *Nurad*, 966 F.2d at 845. CERCLA does not define the term "arranged for." *Florida Power & Light*, 893 F.2d at 1317.

Although the Court has searched for guidance from the Fourth Circuit for definition, interpretation, and application of the term "arranged for," it does not appear as if the Fourth Circuit has defined or interpreted the term. Nevertheless, other courts have addressed the issue, and the Court finds their discussions instructive.

In *U.S. v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373 (8th Cir.1989), the Eighth Circuit interpreted the phrase "otherwise arranged for" in view of the two essential purposes of CERCLA, which are: (1) to provide the federal government with tools for prompt and effective responses to the problem of hazardous waste; and (2) to ensure those responsi-

---

4. Following a three-day jury trial in October 1989, defendant Powell was acquitted of conspir-

ing to illegally dispose of PCBs and failure to label PCB containers.

ble for the problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created. *Aceto*, 872 F.2d at 1380.[5]

Focusing on CERCLA's second purpose, the Eighth Circuit looked beyond the pesticide manufacturers' characterization of their relationship with the formulating company to determine if the transactions involved an arrangement for the disposal of hazardous substances. *Id.* at 1381. The Eighth Circuit concluded that the complaint alleged sufficient facts to establish that the pesticide manufacturers had "arranged for" the disposal of hazardous wastes. *Id.* at 1382. In finding the pesticide manufacturers had "arranged for" the disposal of wastes, the Eighth Circuit did not require the United States to show that the pesticide manufacturers intended for the wastes to be disposed.

In *Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746 (7th Cir.1993), the Seventh Circuit made a much more conservative interpretation of the term "arranged for" than the *Aceto* court. The Seventh Circuit focused exclusively on the intent of the parties, concluding that the phrase "arranged for" implies intentional action.

A recent decision which addresses arranger liability is *South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402 (11th Cir.1996), wherein the Eleventh Circuit reinforced the "totality of the circumstances" approach which it established in the *Florida Power & Light* decision. Recognizing that factors such as intent, ownership, and knowledge are all useful and relevant in assisting a court in determining whether a party had "arranged for" the disposal of hazardous substances, the Eleventh Circuit noted that these factors do not establish bright-line rules for defining arranger liability. The Eleventh Circuit concluded that it must focus

on all of the facts in a particular case. *Id.* at 406.

■ Having considered the various approaches adopted by the courts in analyzing arranger liability, the Court believes that the statutory language and purposes of CERCLA require adoption of the "totality of the circumstances" approach used by the Eleventh Circuit in *Montalvo* and *Florida Power & Light*. Whether an arrangement for disposal exists depends on the facts of each case. *Florida Power & Light*, 893 F.2d at 1317–18. Each case in which "arrangement for disposal" is to be construed must be decided by reviewing the totality of the circumstances, on a case-by-case basis.

■ Thus, the Court must consider the totality of the circumstances to determine whether the undisputed facts establish that defendants Powell and Marion Engineering "arranged for" the disposal of hazardous substances. After careful review, the Court finds the following facts to be determinative. Defendant Powell possessed the transformers and two drums of waste oil that he knew were contaminated with PCBs. Defendant Powell knew that the transformers contained significant levels of PCBs and knew that one of the transformers was leaking oil. Defendant Powell had special knowledge of the environmental regulations governing the transport and disposal of PCB transformers.

After learning the condition of the transformers, defendant Powell went to Stafford's facility intent on having the transformers removed from his property. While at the Stafford facility, defendant Powell was present and overheard a conversation between defendant Stafford and his employee James Badgett wherein they discussed disposing of the transformers. Defendant Powell knew that the disposal discussed by defendant Stafford and Badgett was illegal.

5. In *Aceto*, the defendants were pesticide manufacturers who hired a formulating company to mix and package pesticides for them. When the formulating company went bankrupt, it was revealed that the site was highly contaminated. The United States brought the action contending that, because the manufacturers retained ownership of its pesticide throughout the formulation and packaging process and because the generation of wastes containing hazardous substances is an inherent part of the formulation process, the manufacturers "arranged for disposal" of hazardous substances and were liable for response costs under CERCLA.

Defendant Powell, several hours after he overheard this conversation, authorized his employee to assist Badgett in removing the metal plates which identified the transformers. Defendant Powell personally removed the labels from the transformers which identified the transformers as containing PCBs. Defendant Powell authorized his employee to assist Badgett in loading the transformers onto Badgett's truck. Defendant Powell authorized his employee to provide Badgett with a tarp to cover the transformers and the two drums of PCB-contaminated oil. Defendant Powell knew that it was illegal to transport the transformers and waste oil in this condition in the manner in which said transformers left his facility.

█ Although defendant Powell chooses to characterize his actions as merely returning goods due to their nonconformance with the conditions of the original sale, in accordance with a commercial transaction under West Virginia law, the undisputed facts conclusively establish that Powell did much more than return the goods. By removing the identifying metal plates and the PCB labels, defendant Powell actively assisted in activities to conceal the ultimate disposal of hazardous waste. Moreover, to the extent that the UCC has any application to the present discussion, defendant Powell cannot violate federal environmental laws in returning regulated goods. *See, Richland–Lexington Airport v. Atlas Properties,* 901 F.2d 1206, 1209 n. 6 (4th Cir.1990) (a contractual disposition of waste contrary to CERCLA is of no effect.) [6]

The defendants also suggest that CERCLA liability does not attach where one is merely a party to a transaction for a useful product. In support of the application of this principle to the present circumstances, defendants cite a portion of this Court's Order of January 14, 1993, granting summary judgment to ARCO, wherein the Court found that, at the time ARCO sold the transformers to Stafford in 1983, the transformers were not at the end of their useful life.

Although the Court appreciates defendants' argument, the condition of the transformers had changed dramatically between 1983 and 1987. The facts which the Court is required to analyze with regard to the culpability of each of the defendants are entirely different. In addressing ARCO's liability for introducing the product into the stream of commerce which ultimately ended with disposal, the Court found that the transaction between ARCO and Stafford involved the sale of a useful product and that no additional evidence existed to suggest an "arrangement" for the ultimate disposal.

In addressing defendant Powell's liability under CERCLA, the Court cannot ignore the significant amount of evidence which reflects that defendant Powell was dissatisfied with the product that he received from defendant Stafford and that he, thereafter, engaged in activities which involved an "arrangement" for ultimate disposal.

After considering all matters of record, the Court finds that the undisputed material facts establish arranger liability under CERCLA. Accordingly, it is

**ORDERED** that the United States' Motion for Summary Judgment as to the liability of defendant Powell and defendant Marion Engineering be, and the same is hereby, **GRANTED.**

---

**6.** Similarly, addressing defendants' "sweepstakes" analogy, if an individual receives unsolicited PCB contaminated mineral oil in the mail, he certainly could not violate federal environmental laws merely because it is not what he ordered. It is anticipated that most individuals, especially those with knowledge of the applicable environmental regulations, would contact the appropriate environmental regulatory authorities.